238 So.2d 156 (1970)
BREVARD COUNTY, Florida, Appellant,
v.
Thomas R. JACKS, As Administrator of the Estate of Sharon Ray Jacks, Deceased Minor, et al., Appellees.
No. 2227.
District Court of Appeal of Florida, Fourth District.
July 31, 1970.
*157 Frank R. Pound, Jr., of Howell, Kirby, Montgomery & D'Aiuto, Rockledge, for appellant.
S. Sammy Cacciatore, Jr., of Law Offices of James H. Nance, Eau Gallie, for appellee Jacks.
*158 FARRINGTON, OTIS, Associate Judge.
This is an appeal by the defendant Brevard County, Florida, from a final judgment for the administrator of the estate of Sharon Ray Jacks based on a jury verdict for damages for the death by drowning of Sharon Ray Jacks on June 24, 1965, in a man-made lake owned and operated by the defendant county as a recreational facility.
At the time of her death Sharon was a mentally retarded eighteen year old girl with a history of epileptic seizures. She required daily medication for control of the seizures. She was last observed wading and splashing with a girl friend, also retarded, in a portion of the lake maintained by the county for bathing and swimming.
This portion of the lake was shallow with a gradual slope from the shore line to a depth of about five feet. Then there was an abrupt drop-off to a depth of six or seven feet. A rope buoy line had previously been maintained to separate the shallow from the deep water, but this buoy line was not in place on the day of the accident.
Prior to Sharon's drowning neither her mental retardation nor her history of epileptic seizures had been reported to the lifeguard who was on duty nearby. The two girls were not accompanied by any adult. Neither girl could swim. Although numerous persons were in the vicinity, there was no evidence that any person heard any outcry, saw any struggle, or observed Sharon in distress. After she was reported missing, the lifeguard found her body in the water on the deep side of the drop-off and just a few feet from the point where the buoy line had previously been maintained.
There was no direct evidence as to the cause of Sharon's drowning. Plaintiff contended that the jury should infer from the circumstances shown by the evidence that Sharon inadvertently got into deep water and drowned due to her inability to swim, that defendant was negligent in failing to maintain the buoy line in place and failing to otherwise warn Sharon of the sudden drop-off, and that such negligence was a proximate cause of Sharon's death. Defendant on the other hand contended that a more reasonable inference would be that Sharon suffered an epileptic seizure, became unconscious and drowned, and that defendant was free of any negligence or breach of duty owed Sharon which in any way contributed to the happening of the unfortunate accident.
Defendant contends that the trial judge erred in excluding from the evidence a copy of the medical records of the University of Florida Health Center offered by defendant relating to decedent including the records of an examination in the neurology clinic on March 7, 1960, a hospitalization of approximately two weeks duration during August, 1960, and a follow-up examination on September 30, 1960. The proffered medical records disclosed extensive testing and treatment of Sharon for an epileptic condition manifested since 1955 by convulsive seizures of varying frequency. The judge ruled that the proffered hospital records relating to a period almost five years before the date of the accident were not relevant or material to the issues being tried, and sustained plaintiff's objection thereto.
Hospital records are admissible under the Uniform Business Records as Evidence Act, F.S. Section 92.36, F.S.A., when properly qualified thereunder. Not every hospital paper relating to the patient's case is admissible as a hospital record under the statute, and the trial court retains much discretion as to the admissibility of particular entries or papers in the hospital record.[1] However, the statute should be construed *159 so as to effectuate its purpose which is to provide reliable evidence regarding the hospitalization, yet to avoid the necessity of the expense, inconvenience, and sometimes impossibility of calling as witnesses the attendants, nurses, and physicians who collaborated to make the patient's hospital record. 40 Am.Jur.2d, Hospitals and Asylums, § 43, p. 883, citing Weis v. Weis, 1947, 147 Ohio St. 416, 72 N.E.2d 245, 169 A.L.R. 668. We have examined the proffered medical record and are of the opinion that much of the information contained therein was relevant and material to a determination of defendant's contention that Sharon drowned as the result of an epileptic seizure while in the water. Exclusion of the entire record was prejudicial error.
Defendant also contends that the trial judge erred in refusing to admit into evidence a photograph depicting a sign bearing the words, "Swim At Own Risk." The sign was shown to have been posted near the point where Sharon entered the water. Plaintiff contends the photograph depicting the sign was inadmissible because the posting of the sign constituted an ineffective attempt by the county to evade its responsibility to keep its swimming and bathing facility in a reasonably safe condition, and because the sign did not warn of the particular danger to Sharon  the sudden drop-off from shallow to deep water. Defendant contended that the sign constituted a warning of danger, and that by entering the lake in the face of such warning Sharon assumed the risk of drowning.
We are of the opinion that Sharon's use of the bathing facility in the presence of the sign depicted in the photograph did not amount to an assumption by her of the risk of injury or death due to any negligence of the operator of the facility. However, the photographic evidence of the existence of the sign should have been received as relevant to the issue of defendant's duty to warn a user of any dangerous conditions of the facility of which the defendant through its agents had knowledge, concerning which duty the jury was properly instructed. Whether the sign constituted a reasonably adequate warning of an existing danger was for the jury to determine. The jury should have been instructed that the exculpatory language of the sign would not relieve the defendant of liability for negligence.
Defendant further contends that it was error for the trial judge to strike the asserted defense of assumption of risk at the conclusion of all of the evidence. We find no error in this ruling since there was no evidence that Sharon was aware that wading in the portion of defendant's lake maintained for such use involved any danger or risk to her. Assumption of risk involves subjective appreciation of and voluntary exposure to the particular risk involved. Jones v. Crews, Fla.App. 1967, 204 So.2d 24. The contention of defendant that Sharon drowned as the result of an epileptic seizure and that she assumed the risk thereof by entering the water knowing that she was subject to such seizures does not involve the affirmative defense of assumption of risk, but rather constitutes a denial that Sharon's death was the result of any breach of duty owed her by defendant.
We have considered defendant's other contentions that the court erred in instructing the jury on concurring cause and denying defendant's motion for a directed verdict and find no error in these rulings. Since the case will have to be retried, we have not considered defendant's contention that the verdict was excessive.
*160 For error in rejecting the medical record and photograph discussed in this opinion the final judgment appealed from is reversed and the case remanded for a new trial.
WALDEN, J., concurs.
OWEN, J., dissents, with opinion.
OWEN, Judge (dissenting).
While I entertain some doubt that the rulings complained of were in fact error, if they were it appears to me after an examination of the entire record that the errors complained of have not resulted in a miscarriage of justice. I would affirm the judgment. Section 59.041, F.S. 1967, F.S.A.
NOTES
[1] 40 Am.Jur.2d, Hospitals and Asylums, § 43, p. 884  "Unless subject to such specific objections as irrelevancy, inadequate sources of information, self-serving character, or exceeding the bounds of legitimate expert opinion, the admissibility of hospital records in evidence under the Uniform Business Records Act may extend to such matters, among others, as the physical examination findings, the patient's symptoms and complaints, treatment and progress records, diagnoses by those qualified to make them, the results of analyses and laboratory tests, X-rays, the behavior of the patient, and those parts of the patient's history inherently necessary or at least helpful to the observation, diagnosis, and the treatment of the patient."