542 So.2d 412 (1989)
Kenneth T. KURYNKA, As Personal Representative of the Estate of Lois Kurynka, Deceased, Appellant,
v.
TAMARAC HOSPITAL CORPORATION, INC., a Florida Corporation D/B/a University Community Hospital; Stanley E. Richter, M.D.; and Stanley E. Richter, M.D., P.A., Appellees.
Nos. 87-0746, 87-1819, 87-1853 and 87-2229.
District Court of Appeal of Florida, Fourth District.
April 12, 1989.
Rehearing Denied May 24, 1989.
Sheldon P. Schlesinger, P.A., Fort Lauderdale, Jane Kreusler-Walsh and Larry Klein of Klein & Beranek, P.A., West Palm Beach, for Kenneth T. Kurynka.
Thomas G. Guzda of Jones and Zaifert, Fort Lauderdale, for appellant-Florida Patient's Compensation Fund.
Rex Conrad and Susan L. Dolin of Conrad, Scherer & James, Fort Lauderdale, for appellee-Tamarac Hosp. Corp., Inc. d/b/a University Community Hosp.
Rhea P. Grossman of Rhea P. Grossman, P.A., Miami, and Kevin P. O'Connor of Lanza & O'Connor, P.A., Coral Gables, for appellees-Stanley E. Richter, M.D. and Stanley E. Richter, M.D., P.A.
STONE, Judge.
This is an appeal by the plaintiff in a wrongful death action for medical malpractice, following a jury verdict for the defendant *413 hospital and doctor. The thirty-one year old decedent was being treated in the hospital emergency room for a bronchial condition and asthma when she went into cardiac arrest.
The sole issue is whether it was error to admit a laboratory report into evidence. The report reflected the results of a urine screen, which found: "RF similar to cocaine metabolite." The testing had been performed, and the report prepared, by an independent outside laboratory. The unverified report had been placed in the hospital records. The report was introduced to support the defense position that factors related to cocaine withdrawal, not malpractice, were the likely cause of death.
At trial, the plaintiff raised numerous challenges to the substantive accuracy of the report, as well as procedural objections to its admission. The plaintiff contends that the samples tested may not be those of the decedent, and that the tests were not accurate. The report's indication of drug use was uncorroborated. There was no other evidence that the decedent used cocaine or that cocaine was involved. There was no testimony by anyone involved in the testing, reporting, or chain of custody. The defendants' attempt to introduce the report through a lab executive, who was hired long after the report was made and who had no knowledge of any facts, was rejected by the court.
It is undisputed that evidence of uncorroborated and unauthenticated test results is generally inadmissible. See, e.g., King Motor Co. v. Pollack, 409 So.2d 160 (Fla. 1st DCA 1982). The defense argues that the tests were admissible under the business records exception to the hearsay rule, as hospital records. See Brevard County v. Jacks, 238 So.2d 156 (Fla. 4th DCA 1970). However, medical records, just as any other type of business records, cannot be admitted without a predicate demonstrating the authenticity of the records. Cf. City of Fort Lauderdale v. Florida Unemployment Appeals Commission, 536 So.2d 1074 (Fla. 4th DCA 1988); National Car Rental System, Inc. v. Holland, 269 So.2d 407 (Fla. 4th DCA 1972), cert. denied, 273 So.2d 768 (Fla. 1973); Specialty Linings, Inc. v. B.F. Goodrich Co., 532 So.2d 1121 (Fla.2d DCA 1988); Beasley v. Mitel of Delaware, 449 So.2d 365 (Fla. 1st DCA 1984); City of Tampa v. Green, 390 So.2d 1220 (Fla. 1st DCA 1980); Brown v. State, 389 So.2d 269 (Fla. 1st DCA 1980); Jaime v. Vilberg, 363 So.2d 386 (Fla.3d DCA 1978), cert. denied, 373 So.2d 462 (Fla. 1979). See also State v. James, 255 S.C. 365, 179 S.E.2d 41 (1971).
We conclude that the court erred by admitting the lab report into evidence. Considering the totality of the evidence, this error requires reversal, as it was particularly prejudicial here, where the alleged use of cocaine by the decedent was the basis of the defense that her death was not caused by the treatment given.
The defendants also argue that the evidence would be admissible in any event because the report was used by the defense experts as a basis for their opinions. As a rule, experts may express opinions drawn from data that itself may not be admissible. Robinson v. Hunter, 506 So.2d 1106 (Fla. 4th DCA), rev. denied, 518 So.2d 1277 (Fla. 1987); Bender v. State, 472 So.2d 1370 (Fla.3d DCA 1985); § 90.704, Fla. Stat. However, an expert's testimony may not be used merely to serve as a conduit to place otherwise inadmissible evidence before a jury. Hungerford v. Mathews, 511 So.2d 1127 (Fla. 4th DCA 1987); Smithson v. V.M.S. Realty, Inc., 536 So.2d 260 (Fla.3d DCA 1988); 3-M Corporation-McGhan Medical Reports Division v. Brown, 475 So.2d 994 (Fla. 1st DCA 1985).
In Auletta v. Fried, 388 So.2d 1067 (Fla. 4th DCA 1980), this court rejected the introduction of hearsay through expert testimony, finding that the testimony had become tainted by the extent to which the opinions were based on the inadmissible hearsay. See also Harris v. Game and Fresh Water Fish Commission, 495 So.2d 806 (Fla. 1st DCA 1986). Here, there was no independent testimony about how the tests were conducted or who performed them, nor even of whether the samples used were verifiably those of the decedent, *414 all of which was questioned by the plaintiff.
There is no need to address the other issue raised in the consolidated appeal. The final judgment is reversed and the case is remanded for a new trial.
GUNTHER, J., concurs.
HERSEY, C.J., dissents with opinion.
HERSEY, Chief Judge, dissenting.
The question of the admissibility vel non of the laboratory report depends, or so it seems to me, upon the factual issue to which its relevance is asserted. There is no question but that the report was part of the hospital records. It follows that the report was a tool in the diagnosis and treatment of the patient. There is no allegation that the treating physician and the hospital were for some reason negligent in relying on the report. Therefore, an expert opinion as to whether the health care providers negligently treated the patient under the circumstances must take into account all data, including the report, upon which diagnosis and a course of treatment were predicated. Assuming the hospital records themselves are properly authenticated, neither section 90.704, Florida Statutes, nor the case law contemplates or requires authentication of separate items contained within those reports.
On the other hand, if the factual issue is the pathological (rather than the legal) cause of the death of this patient and the sole evidence of the presence of cocaine metabolite which would explain the patient's symptomatology and respiratory failure resulting in cardiac arrest (twice) is the laboratory report, then the result may be different. In such a case it would be reasonable to apply the rule that "an expert's testimony may not be used merely to serve as a conduit to place otherwise inadmissible evidence before a jury" as explained by the majority opinion. It would then be appropriate to require a proper foundation to be laid for introduction of the laboratory report, separate and apart from the remaining hospital records. See, e.g., Florida Mining & Materials Corp. v. Florida Unemployment Appeals Commission, 530 So.2d 426 (Fla. 1st DCA 1988).
Our reversal will require a retrial at which, it is assumed, the defendants will lay a proper foundation for introduction of the laboratory report as a discrete document. Its weight will certainly come under scrutiny, but the expert testimony will not be substantially different and the end result seems eminently predictable. In any event, convinced that the report was admissible for the limited purpose previously indicated, I would affirm. Thus, I respectfully dissent.