611 So.2d 1270 (1992)
Douglas J. LOVE, Appellant,
v.
Luz Maria GARCIA, Appellee.
No. 89-3259.
District Court of Appeal of Florida, Fourth District.
December 9, 1992.
Rehearing and Certification Denied February 11, 1993.
*1271 John R. Hargrove and Thomas A. Conrad, of Heinrich, Gordon, Batchelder, Hargrove, Weihe & Gent, Fort Lauderdale, for appellant.
Larry Klein and Jane Kreusler-Walsh of Klein & Walsh, P.A., West Palm Beach, and Scott P. Schlesinger of Sheldon J. Schlesinger, P.A., Fort Lauderdale, for appellee.

ON REHEARING EN BANC
FARMER, Judge.
Upon rehearing by the entire court, we withdraw our opinion of May 29, 1991, and substitute the following in its place.
The defendant driver in an automobile accident case seeks a new trial on account of the trial court's refusal to admit some of plaintiff's hospital records into evidence. The excluded records contain the results of two blood alcohol tests, one conducted and evaluated by the hospital's own personnel, and a second test conducted and evaluated by an outside laboratory at the hospital's request. The question presented by this case deals with the application of FEC section 90.803(6)(b) to trial court decisions excluding hospital records.
This case arose when a car driven by defendant struck plaintiff as she attempted to walk across the road. In a pretrial catalogue, the driver announced his intention to introduce the results of the pedestrian's blood tests through the record custodians of both the hospital and the independent *1272 laboratory.[1] The pedestrian moved successfully to exclude the evidence because the driver had failed to list any witnesses who could lay a proper predicate for admission of the test results. After the jury found each party fifty percent negligent, the driver moved for a new trial.
Under the general requirement of knowledge, see Florida Evidence Code [FEC][2] sections 90.604 and 90.802, testimony founded on the information of others, and not on the personal observation of the witness, is ordinarily inadmissible. Because a rigid application of the rule of knowledge may lead to unjust results, however, exceptions to the hearsay rule have emerged, first through the common law and now codified by statute. But, as Wigmore has observed, the essential purposes and reasons for the hearsay rule itself are indispensable to understanding the exceptions. 5 WIGMORE ON EVIDENCE (Chad. rev. 1974), § 1420.
The theory of the hearsay rule is that many possible sources of inaccuracy and untrustworthiness which may underlie a bare, untested assertion of a witness can best be brought to light and exposed  if they exist at all  only by cross-examination. Two circumstances, however, suggest a need to relax the requirement for cross-examination. First, it may be superfluous, as where it is sufficiently clear that the assertion is so free from the risk of inaccuracy and untrustworthiness that cross-examination is entirely "a work of supererogation." Id. Second, cross-examination may be impossible, as when the declarant is dead. Id. Hence, these two elements  trustworthiness and necessity  have given rise to a number of recognized exceptions to the hearsay rule.
One of the early exceptions was for shopbooks, or business records. Under the common law development of the rule, the entries adduced were purely factual in nature, e.g., goods shipped or payments received, so that issues as to opinion evidence in shop-books or business records were rare. Changes in the early statutory business records exceptions were ultimately made to incorporate the term "condition" as to the kinds of facts that could be proved by business records. But even with that authority, the exception was troublesome in the area of medical records.
As one treatise has noted, those who objected to the admission of medical records containing diagnoses argued that the difference between facts and opinions is fundamental to the law of evidence. 4 WEINSTEIN'S EVIDENCE, para. 803(6)[06]. The qualifications of the person rendering the opinion are everything, they argued, and cross-examination is absolutely indispensable to safeguard against the danger that the jury would be so swept away by the opinion itself that later rebuttal would be useless. Id.
The proponents of the exception allowing such diagnostic, opinion evidence argued, in turn, that health care providers make life and death decisions on the basis of the information contained in their institutional files, so the trustworthiness of such entries in medical records is unassailable. Moreover, the hospital employee, often a technician, who actually administered the specific test or procedure, was often unknown or unavailable, or could not be brought into court without extreme inconvenience to the hospital. In other words, they argued, the traditional elements of necessity and trustworthiness conduced toward admissibility.
In some cases, as might be expected, there was an accommodation between the broad extremes of either admitting or excluding all such evidence. Balancing the need for evidence which was relevant, material *1273 and probative, against the obvious prejudice of some untested opinions, some courts adopted a middle ground. As one leading case did, the judges looked for diagnoses which involved conjecture and opinion, and distinguished them from diagnoses which any competent physician would accept. See, e.g., New York Life Insurance Co. v. Taylor, 147 F.2d 297 (D.C. Cir.1945).
Florida first addressed the subject in Brevard County v. Jacks, 238 So.2d 156 (Fla. 4th DCA 1970). In that case, an eighteen year-old, mentally retarded girl with a history of epilepsy drowned in a man-made lake owned by the defendant. At trial, the defendant sought to introduce an entire hospital file containing the five-year old records of a neurological examination on a specific day, a two-week hospitalization five months later, and a one-day follow-up examination one month after that. The records contained extensive test and treatment results for epilepsy.
Our opinion says that the trial court sustained an objection based on the fact that these five-year old records were not material or relevant to the defense that she had drowned because of an epileptic seizure, rather than because of the failure to warn of a hidden drop-off not far from the shore. Yet we discussed the business records exception to the hearsay rule. Although we decided that "much of the information" in the file was material and relevant and thus that the entire file should not have been excluded, we added:
Not every hospital paper relating to the patient's case is admissible as a hospital record under the statute, and the trial court retains much discretion as to the admissibility of particular entries or papers in the hospital record.
238 So.2d at 158.
Our decision was thus hardly a wholesale endorsement for the admissibility of every hospital test report under the business records exception. Properly read, it amounts to a recognition of the broad discretion given to the trial judge under the statutory business records exception either to admit or exclude parts of such records as the circumstances suggest. Indeed the correct sentiment was expressed by Judge Owen in his opinion for our court in National Car Rental System Inc. v. Holland, 269 So.2d 407 (Fla. 4th DCA 1972), where he noted the "tendency to view anything labelled `business records' as being thereby admissible under the statute without more." 269 So.2d at 413. With that background, it is now appropriate to consider Florida's codification of the rules of evidence.
The FEC followed the earlier adoption of the Federal Rules of Evidence, specifically including its rule 803(6). Both versions of the business records exception to the hearsay rule omit the necessity element. In other words, it does not matter that the person who made the record entry, or who conducted the test, is available for testimony, if the other conditions of the statute have been met. In light of the history of the exception, it is obvious that the displacement of the necessity requirement is predicated on the strong trustworthiness element found in medical data entries on which health care providers relied in rendering their course of treatment. One may fairly deduce, however, from the development of the exception that the absence of trustworthiness as to a given entry or record in a patient's hospital chart may resurrect the requirement of showing necessity for the use of the record in the place of testimony subject to cross-examination.
The federal rule allows for the universal admission of diagnostic, opinion evidence even though it is introduced solely through the hospital's own records and without the diagnoser or opinion-giver being present for cross-examination. That version is, however, entirely different from the comparable provision in FEC. Modeled only partially after the federal rule, FEC section 90.803(6) provides as follows:
90.803 Hearsay exceptions; availability of declarant immaterial.  The provision *1274 of s. 90.802 to the contrary notwithstanding, the following are not inadmissible as evidence even though the declarant is available as a witness:
* * * * * *
(6) RECORDS OF REGULARLY CONDUCTED BUSINESS ACTIVITY. 
(a) A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinion, or diagnosis, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity and if it was the regular practice of that business activity to make such memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the sources of information or other circumstances show lack of trustworthiness. The term "business" as used in this paragraph includes a business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.
(b) No evidence in the form of an opinion or diagnosis is admissible under paragraph (a) unless such opinion or diagnosis would be admissible under ss. 90.701-90.705 if the person whose opinion is recorded were to testify to the opinion directly.
The most important[3] feature of the Florida version of the business records exception is in the addition of subsection (b), which is not contained in the federal rule. This provision adds a requirement that business record evidence be able to stand alone as opinion evidence, even if it otherwise meets the requirements of the statute. The essential meaning of subsection (b) is thus that the trial judge has broad discretion[4] to exclude any medical record, or entry in a record or chart, upon a conclusion that it would not be admissible as an opinion even if the entrant of the record were present in court and testifying.
We first confess to some inconstancy in our post-FEC opinions on the admission of hospital blood-alcohol tests. In Kurynka v. Tamarac Hospital Corporation, Inc., 542 So.2d 412 (Fla. 4th DCA 1989), we reversed because of the trial court's decision to admit the evidence despite the lack of testimony concerning the testing, reporting, or chain of custody. In that case, the opponent of the evidence had made clear that he objected to the accuracy and reliability of the evidence because of the testing procedures.
The blood test had been conducted not by the hospital itself but by an outside testing laboratory. Although an executive from the outside laboratory testified as to the business record essentials, no one testified as to the drawing of the blood, the chain of custody, the administration of the test, and the interpretation of the results. As to the proponent's assertion that the results were admissible under the business records exception[5], we responded that even business records required a predicate as to authenticity. Ultimately we concluded that, in the circumstances, the trial court had erred in *1275 admitting the record.[6]
In Thunderbird Drive-In Theatre v. Reed, 571 So.2d 1341 (Fla. 4th DCA 1990), we faced two excluded blood tests, one done within the hospital and one conducted by an outside laboratory. We determined that the outside record was properly excluded under Kurynka. As to the hospital's own test, we observed that:
The report of laboratory blood test results performed in a hospital and contained in a patient's hospital record is generally admissible in evidence when the appropriate foundation is laid by a qualified person such as a hospital records custodian pursuant to [FEC section 90.803(6)].
571 So.2d at 1345. Our opinion does not state the basis for plaintiff's objection, except to note that "various grounds" were asserted.
In reversing for a new trial, however, we placed special emphasis on the refusal of the trial court to permit the defendants even to make a proffer on the records custodian's testimony. The clear implication of our holding is thus that the evidence was required to be admitted upon a showing that the blood test qualified as a business record under FEC section 90.803(6), without any consideration as to the accuracy or reliability of the record. In this sense, Kurynka and Thunderbird are at odds with one another.
As we have already seen, the essential ingredient for the exception is the inherent reliability or trustworthiness of the business record entry. Where, however, the reliability, accuracy or trustworthiness of the record has been properly challenged, then the basis for the exception has disappeared. To require the admission of business record evidence in the face of grounds suggesting the lack of accuracy, reliability or trustworthiness is to allow the exception, in the shop-worn phrase, to swallow the rule. This absorption of the hearsay rule may be especially unfortunate in instances where the entry is raw data in a medical chart and a traditional application of the rule might have allowed for its admission.
In a medical records case, the trustworthiness element  the only basis for business records admissibility  relates to whether the health care providers relied on the test result in the course of treatment. Here, the first blood test  done by the outside laboratory  was not ordered by any doctor, nurse or other health care provider at the hospital but instead by a policeman who accompanied the pedestrian to the hospital. There is no suggestion possible, therefore, that any life or death medical decision was made or influenced by that test. Hence the historical basis for trustworthiness of a medical record is entirely absent for the initial test.
The record also reflects that the second test was done in the hospital, but there is no showing as to who requested it or why. Just as important, there is no suggestion in this record that any health care provider at the hospital ever considered blood alcohol in treating the pedestrian for her injuries from the motor vehicle accident. There is no evidence that, by the time the results from either of these tests became available (one or two days later?), they were relevant in any way to her treatment. Indeed, the trial judge said:
But the key is are you going to let medical records into evidence despite a charge to the jury or an instruction to the jury that they shan't be considered for any purpose  I mean any other purpose other than what they're put into evidence for when you know darned well that what you're doing is letting in an unqualified piece of evidence that the jury is going to consider for the truth of what is sought to be proved by it[?] Not *1276 that there is medical  I mean not that that reading was obtained and the doctor acted on the strength of that, but rather that the test is there? It's in the medical records; therefore she must have been drunk. [e.s.]
R. 15-16.
We recognize that gaps in the chain of custody or other uncertain circumstances in the administration or interpretation of a test result are ordinarily thought to go to the weight and credibility of the evidence, not its admissibility. See Thomas v. Hogan, 308 F.2d 355 (4th Cir.1962). But there are good reasons for treating blood alcohol readings differently. A trial judge may reasonably conclude that the undoubted inferences, which the jury may draw from a mere blood alcohol level, may create prejudice that no amount of argument or contrary evidence can fairly challenge. In this situation, it is ironic that the prejudice may arise, not from evidence that is inherently reliable and accurate or true, but instead from evidence whose accuracy has been called into question. For blood alcohol level, the assertion that the objection goes to the weight of the evidence, which the opponent is still free to argue or counter with other evidence of his own, may amount to little more than putting vinegar in the milk with the hope that it may later be strained out.
It is obvious from the above quoted comments of the trial judge that he was concerned that any probative value from these entries might be overcome by prejudice to the pedestrian. FEC section 90.403 authorizes the trial judge to exclude concededly relevant evidence on a finding that it is prejudicial. To remove any possible prejudice from bare testing data in a hospital chart the judge is empowered, under subsection (b) of FEC section 90.803(6), to conclude that the test result or chart entry requires the additional circumstance of testimony from a qualified expert to establish its use in the case. The court is allowed, in short, to weigh any possible misunderstanding or prejudice from such evidence against its diagnostic implications.
In light of the foregoing, we now hold that when medical record entries are sought to be admitted under FEC section 90.803(6), if properly challenged by the opponent with a sufficient showing that relates to the accuracy, reliability or trustworthiness of the entry, the trial court may in its discretion decline to admit them unless the proponent of the evidence lays the proper predicate for the entry. By a proper predicate, we mean evidence as to the drawing of the blood, the chain of custody, the administration of the test, and the interpretation and reporting of the test result. Furthermore, even if the requirements for business record admission under FEC section 90.803(6) are shown, or if the proper predicate is established, the trial judge must still assess the evidence for admissibility from the standpoints of relevance, materiality, competency, expert opinion, or the possibility that inherent prejudice may outweigh probative value. In short, all of the other provisions of the FEC remain in play. We therefore withdraw from our Kurynka and Thunderbird decisions, except to the extent that they are consistent with this opinion.
We review decisions on the admission or exclusion of evidence under the reasonableness test of Canakaris v. Canakaris, 382 So.2d 1197, 1202-03 (Fla. 1980). So viewed, we are unable to say that this judge, an esteemed and extremely capable trial judge of great experience, abused his considerable discretion in refusing to admit these particular blood alcohol test results solely as business records and without the protection of expert testimony as to their uses and meaning.[7] To do so would be to substitute our judgment for that of the *1277 judge on the scene. We can find nothing in FEC section 90.803(6) that empowers us to do so.
AFFIRMED.
LETTS, DELL, GUNTHER, STONE and POLEN, JJ., concur.
HERSEY, J., dissents with opinion, with which GLICKSTEIN, C.J., DOWNEY, ANSTEAD and WARNER, JJ., concur.
WARNER, J., dissents with opinion, with which GLICKSTEIN, C.J., DOWNEY, ANSTEAD and HERSEY, JJ., concur.
GARRETT, J., recused.
HERSEY, Judge, dissenting.
Because the principal dissent characterizes the en banc opinion as a "narrow holding" it is necessary briefly, by this separate dissent, to explore a more systemic problem, or series of related problems, that inhere in the rationale employed by the majority in concluding as it does.
The business records exception to the hearsay exclusionary rule is simply a burden-shifting device. Its purpose is economic and utilitarian. While couched in terms of surgically incising one tiny and untidy area of the subject matter intended to be included within the exception, there can be little doubt that resourceful counsel will correctly argue in future cases that many of the premises underlying the majority opinion apply with equal vigor to a variety of business record items. Thus, the exception will eventually effectively be eviscerated.
It is further respectfully suggested that while the en banc opinion attempts to be straight forward in its logic and its contemplation, it is so far-reaching in ultimate impact that one may be misled by some of the parts that make up the whole. Some examples in point: the opinion explores the history of the shop-book exception and points out that "issues as to opinion evidence in shop-books ... were rare." The necessary but incorrect assumption that arises from this and the subsequent lengthy analysis is that the results of a blood-alcohol test constitute or contain an opinion ... and thus are unique and suspect. This is not intended to suggest that the discussion in question is intentionally misleading. It is simply to point out that the potential for misinterpretation exists by virtue of the juxtaposition of the references to "opinion" testimony in an argument directed toward a particular scientific test, to-wit, a chemical analysis or simple quantitative analysis. A second example: the opinion postulates that the essential ingredient of trustworthiness of a medical "business record" relates to "whether the health care providers relied on the test result in the course of treatment." With respect, it is suggested that it would be more accurate to state the question as whether the health care providers were entitled to or likely to rely on the test results. For if the patient were a diabetic, the health care provider might very well be concerned with the amount of alcohol present in the blood stream before prescribing or proscribing a particular intravenous injection.
A final example (and there are others): the majority recites overbroadly that "we review decisions on [the admissibility] of evidence under the reasonableness test [citing Canakaris]." Certainly we apply a reasonableness standard to measure the discretionary calls of the trial judge. But that is not to say that the admission or exclusion of any and all evidence is discretionary. The rules of evidence may be flexible, but they are not illusory. To exclude the blood-alcohol tests here by relying upon Canakaris is too facile; to exclude them under the business records exception in every case is to turn the exception upon its head.
An argument could be made (but was not) that a hospital is not in the business of compiling a record for law enforcement of tests for blood-alcohol ordered from an offsite *1278 and unrelated medical laboratory. The same simple argument should not be available as to in-house laboratory tests. The authenticity, reliability and accuracy of a hospital record should be the sine qua non of admissibility of such records under the business records exception to the hearsay rule. These subjects should be fair game on the preliminary issue of admissibility. Such questions as the methods used in analyzing the sample, chain of custody, the expertise of the technician and related matters properly should be inquired into as aspects of the weight and credibility of the evidence and not to its admissibility vel non.
The foregoing is a brief attempt to speak to the business records exception generally as well as to the hospital record of a blood alcohol test specifically. It is explicitly intended to apply as broadly as the majority opinion may be applied by implication. And because the en banc opinion goes too far too fast, I respectfully dissent.
WARNER, Judge, dissenting.
I do not disagree with the legal holding of the majority nor does it conflict with what was said in the panel opinion.[8] Simply put, medical records are admissible under FEC section 90.803(6) through a records *1280 custodian, unless the opponent carries the burden showing the untrustworthy nature of the evidence. The panel opinion reached the same result. Where the panel opinion differs from this new en banc opinion is that the original panel in reviewing the record did not find that the trial court excluded the blood tests because of a showing of untrustworthiness but simply because the trial court was under the impression that all such tests and reports required chain of custody witnesses.
The record reveals no claim made that these records were untrustworthy. Appellee's lawyer stated to the trial court that he had filed a motion in limine to preclude any reference to the tests because appellant had not listed chain of custody witnesses. The court and the lawyer for appellee then discussed another case in which the court had been asked to and did make an identical ruling. In addition, appellee drew the court's attention to the Kurynka case and told the court that Kurynka held that it was reversible error to admit a blood test without a proper predicate of chain of custody (which is a misreading of Kurynka). Then the trial court engaged in a discussion with counsel which included the portion cited in the majority opinion. But it is clear from the discussion that the court never considered whether this particular test was somehow untrustworthy. The ruling was that any blood test for alcohol was not to be admitted without the proof of a chain of custody. While the majority now reads statements which might have been argued as showing untrustworthiness, it simply was not argued to the trial court, and the trial court did not rule that these documents were untrustworthy. The court simply ruled that based on Kurynka a chain of custody predicate was essential to admissibility. Thus, without a determination in this case that these documents were untrustworthy, I think the trial court erred in excluding them.
It seems to me that despite its narrow holding, the majority opinion implies that there is a presumption of untrustworthiness of all blood alcohol tests, requiring the use of chain of custody evidence and test procedure evidence in order to admit them. Thus, both my dissent and the majority opinion center around who has the burden of proof to show untrustworthiness. As I read the business record rule, the proponent of the record can rely on the custodian to supply the predicate for admission unless circumstances show lack of trustworthiness. It would be the opponent's burden to conduct the discovery and call the witnesses to prove untrustworthiness. Since the entire rationale behind the business records exception is based on "the reliability of business records supplied by systematic checking, by regularity and continuity which produce habits of precision, by actual experience of business in relying on them," Sponsor Notes, section 90.803(6), Florida Statutes, I conclude that untrustworthy records are assumed to be the exception rather than the norm. Therefore, in my view the burden is properly placed on the opponent of the record to show its untrustworthiness rather than to compel the proponent to prove chain of custody of specimens, testing methods, etc., in every case, even when there is no serious challenge to the records. For the large majority *1281 of such cases proof of the record by the custodian will suffice. For these reasons, I dissent.
NOTES
[1] The driver's pretrial disclosure of witnesses failed to designate the hospital and laboratory personnel who drew the blood, administered the test, interpreted the results or made the entries in their respective records. Finding prejudice from the failure to disclose these personnel, the trial court refused to permit an amendment at trial to the driver's pretrial witness list.
[2] All references to the Florida Evidence Code are to chapter 90, Florida Statutes (1991).
[3] We note that the plain text of this statute does not require that evidence fitting within its definition be automatically admitted without more. The thrust of the rule is simply that the evidence is not inadmissible just because the entrant is not present in court and testifying. That is far from requiring the admission of any evidence that otherwise satisfies its provisions.
[4] It is well established that, in the absence of a clear showing of error, the trial judge's determination on the admissibility of evidence should not be disturbed on review. Buchman v. Seaboard Coast Line Railroad Co., 381 So.2d 229 (Fla. 1980). The trial judge also has discretion to determine the subjects on which experts will testify, and that determination will not be disturbed on appeal without a clear showing of abuse of discretion. Executive Car & Truck Leasing Inc. v. DeSerio, 468 So.2d 1027 (Fla. 4th DCA), review den., 480 So.2d 1293 (Fla. 1985).
[5] Our opinion does not cite FEC section 90.803(6) or discuss how its text applied to the facts and circumstances.
[6] By way of contrast, in Gavin v. Promo Brands USA Inc., 578 So.2d 518 (Fla. 4th DCA 1991), while we affirmed the trial court's decision to admit the test result evidence, we carefully noted that a proper predicate for its admission had been laid. The laboratory technician testified as to methodology for the collection and testing of samples and the reporting of results.
[7] Although the driver might then have adduced the same evidence through testimony of the necessary personnel who participated in the testing, the failure to disclose those witnesses in the pretrial catalogue created further prejudice to the pedestrian. The trial court's decision in this regard is also covered by the abuse of discretion test. See Binger v. King Pest Control, 401 So.2d 1310 (Fla. 1981).
[8] The panel opinion, except for the questions certified to the supreme court is hereinafter reprinted.

Appellant seeks a new trial. His car had struck appellee as she crossed University Boulevard in Sunrise, Florida. The jury found each party to be fifty percent negligent. One of the points on appeal is that the trial judge committed error when he refused to admit appellee's hospital records in evidence. We reverse as to that issue and affirm as to the remaining issues.
After the accident, appellee was taken to Florida Medical Center for treatment. At the hospital, blood samples were taken from her. One sample was sent to an independent laboratory and the other was analyzed at the hospital's laboratory. The hospital records contained both test results of appellee's alcohol blood level. Appellant's pretrial catalogue listed the records custodians of both the hospital and the independent laboratory as witnesses and the hospital records as exhibits. Appellant also listed an expert to testify as to appellee's level of intoxication at the time of the accident. Nine months before trial, the expert was deposed with appellee's counsel in attendance. On the day of trial, the judge heard appellee's motion in limine. Appellee sought to exclude the blood test results and the expert's testimony. The objection to the test results was that appellant failed to list any witness in his pretrial catalogue who could lay a proper predicate for admission of the blood test reports. The trial judge agreed and granted the motion. Appellant then requested that he be allowed to call personnel from the hospital's laboratory and from the independent laboratory to provide the predicate. The trial judge denied that request. The trial took place, but the jury never heard how much alcohol appellee had in her blood at the time of the accident.
Section 90.803(6), Florida Statutes (1989) reads:
RECORDS OF REGULARLY CONDUCTED BUSINESS ACTIVITY. 
(a) A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinion, or diagnosis, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity and if it was the regular practice of that business activity to make such memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the sources of information or other circumstances show lack of trustworthiness. The term "business" as used in this paragraph includes a business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.
Records are admissible pursuant to section 90.803(6) if the party seeking to introduce them can show that the record was (1) made at or near the time of the event recorded, (2) made by, or from information transmitted by, a person with knowledge, (3) kept in the course of a regularly conducted business activity, and (4) if it was the regular practice of that business to make such a record. Saul v. John D. and Catherine T. MacArthur Foundation, 499 So.2d 917, 920 (Fla. 4th DCA 1986). The purpose of section 90.803(6) is to allow a party to introduce relevant records at trial without having to produce all the persons who had a part in preparing the records. Southern Bakeries v. Florida Unemployment Appeals Commission, 545 So.2d 898, 902 (Fla. 2d DCA 1989); McEachern v. State, 388 So.2d 244 (Fla. 5th DCA 1980); Holley v. State, 328 So.2d 224, 225-226 (Fla. 2d DCA 1976). Section 90.803(6) is derived from Rule 803(6) of the Federal Rules of Evidence. The party opposing evidence which is otherwise admissible under the federal rule has the burden of showing the untrustworthy nature of the evidence. Zenith Radio Corp. v. Matsushita Elec. Indus. Co., 505 F. Supp. 1190 (E.D.Pa. 1980), rev'd in part on other grounds, 723 F.2d 319 (3d Cir.1982), rev'd on other grounds, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A brief history of the rule is contained in State v. Garlick, 313 Md. 209, 545 A.2d 27 (1988). Because business records were considered to have a circumstantial guarantee of trustworthiness, the rule was developed to eliminate the inconvenience and sometimes impossibility of producing witnesses who could testify from their personal knowledge as to the truth of the entries made. The business records exception "is generally recognized because of the reliability of business records supplied by systematic checking, by regularity and continuity which produce habits of precision, by actual experience of business in relying on them, and by a duty to make an accurate record as part of a continuing job or occupation." 6C, Fla. Stat. Ann. § 90.803, at 272 (West 1979) (Law Revision Council Note  1976). In other words, we consider that the rule creates a "presumption of correctness and reliability" of such records. Thus, as long as a party properly authenticates the records through the testimony of the records custodian or other qualified witness, as prescribed by the rule, they are admissible. We believe that the reference to the trustworthiness of the record is intended to be the vehicle by which a party can rebut this presumption. However, to allow a party to rebut this presumption by claiming that the record is not trustworthy because the witnesses with first hand knowledge are not testifying, frustrates the purpose of the rule. Initially, through the custodian of the record or other qualified witness, the proponent of the record only has to identify the record, establish its mode of preparation and that it was made in the regular course of business. The party opposing the admission must "seriously challenge" its trustworthiness, Cf. United States v. Licavoli, 604 F.2d 613 (9th Cir.1979), before the proponent is required to present additional evidence about the record or the record keeping process. It appears, from the case law in this state and others, that the phrase concerning the trustworthiness of the record is most often directed to the motive of the person making the record or the mode of preparation. For example, if a person makes a record in preparation for litigation, it loses its presumption of reliability. See e.g., Garcia v. State, 564 So.2d 124, 128 (Fla. 1990) and Law Council Notes to 90.803(6). The trial judge evaluates the sources of information, method and time of preparation to reach his or her opinion as to the record's trustworthiness.
Appellant relies on Thunderbird Drive-In Theatre, Inc. v. Reed, 571 So.2d 1341 (Fla. 4th DCA 1990), which is factually similar to this case. Two blood samples were taken, one sent to an independent laboratory and one analyzed in the hospital's lab. The hospital record contained both reports. Thunderbird attempted to call the hospital's records custodian to authenticate the records and lay the necessary foundation for their admissibility. Reed objected on various grounds to the custodian as a witness. The trial court sustained the objections and Thunderbird was unable to lay the proper foundation to admit the records. In addition, the trial court did not allow Thunderbird to make a proffer of the custodian's testimony. Thus, it was not possible for this court to determine the propriety of the trial court's ruling. However, Judge Downey stated that the statute permits such records when the proper foundation is laid, through the testimony of the records custodian, that is, that the laboratory report was made at or near the time of the event recorded, by a person with knowledge, in the regular course of business and as a regular practice of the hospital's business activity. Id. at 1345.
Sub judice, appellee objected to the introduction of these records solely because appellant intended to call the records custodian and appellee contended that the records custodian could not provide proper authentication. In other words, to properly introduce these records appellant had to provide someone with firsthand knowledge about them. In Brevard County v. Jacks, 238 So.2d 156 (Fla. 4th DCA 1970), this court noted that hospital records admissible under the hearsay exception include the results of analyses and laboratory tests, unless they are subject to objections as to irrelevancy, inadequate sources of information, self-serving character, or exceeding the bounds of legitimate expert opinion. Id. at 158 n. 1.
Appellee relies on the following passage from Brevard County v. Jacks, 238 So.2d 156 (Fla. 4th DCA 1970) as authority for the proposition that the trial court has the discretion to admit records:
Not every hospital paper relating to the patient's case is admissible as a hospital record under the statute, and the trial court retains much discretion as to the admissibility of particular entries or papers in the hospital record.
Id. at 158. The very next sentence states:
However, the statute should be construed so as to effectuate its purpose which is to provide reliable evidence regarding the hospitalization, yet to avoid the necessity of the expense, inconvenience, and sometime impossibility of calling as witnesses the attendants, nurses, and physicians who collaborated to make the patient's hospital record.
Id. at 158-159. Thus, while it is within the trial judge's discretion to admit documents, he or she should do so in a manner which effectuates the purpose of the statute, that is, in a manner which avoids the necessity of calling every person who had a part in creating the record to testify.
Sub judice, appellant was prepared to introduce the records through the testimony of the records custodians of both businesses which performed the tests. Appellee did not object to the introduction of those tests because they were irrelevant, they were based on inadequate sources of information, they were self-serving, or because they exceeded the bounds of legitimate expert opinion. We conclude that appellant could have properly authenticated these records through the testimony of the records custodians of the hospital and laboratory. Kurynka v. Tamarac Hosp. Corp., 542 So.2d 412, 413 (Fla. 4th DCA 1989) (citing City of Fort Lauderdale v. Florida Unemployment Appeals Commission, 536 So.2d 1074 (Fla. 4th DCA 1988)). The predicate for admitting these records is no different from that for admitting other business records. The trial court abused its discretion by ruling that the blood tests were inadmissible because appellant did not have the proper witnesses to authenticate those records.
Appellee has argued that the blood test results are unreliable because the independent laboratory report indicates that the blood was collected at 12:25 p.m. on April 4, 1986 and the result obtained at 8:51 a.m. on April 4, 1986. At the trial level, appellee did not object to the admission of these records on these grounds. At the time appellee filed her motion in limine, she had already attended the expert's deposition. She was aware of the difference in the times on the reports. She did not raise this issue when arguing her motion in limine. Appellee did not preserve this issue for appeal.