676 So.2d 991 (1996)
James Edward BROCK, Appellant,
v.
STATE of Florida, Appellee.
No. 94-1250.
District Court of Appeal of Florida, First District.
June 11, 1996.
Rehearing Denied July 26, 1996.
*992 Nancy A. Daniels, Public Defender; Chet Kaufman, Assistant Public Defender, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General; Patrick Martin, Assistant Attorney General, Tallahassee, for Appellee.

ON MOTION FOR REHEARING AND REHEARING EN BANC AND TO CERTIFY A CONFLICT OR QUESTION
PER CURIAM.
The appellant, James Edward Brock, moved for rehearing and rehearing en banc, and for certification of a conflict or question, relating to our previously issued affirmance of his convictions and sentences for two counts of battery on a law enforcement officer and one count of disorderly conduct. The state, as the appellee, filed a response asserting that Brock's motions simply reargued the same points made in the initial and reply briefs. In the first of his four issues raised on appeal, Brock argued that he is entitled to a new trial because the trial court refused to admit into evidence test results indicating that Brock was intoxicated when the offenses allegedly occurred. Having reviewed the record and the applicable statutory and decisional law, we agree that a rehearing is warranted. We conclude that the trial court abused its discretion in finding that the defense had failed to lay a proper predicate for admission of the test results pursuant to section 90.803(6), Florida Statutes, and Love v. Garcia, 634 So.2d 158 (Fla.1994). The first issue compels us to reverse and remand for a new trial.
At trial, the jury heard the following evidence relating to the incident from which the charges arose. On a Friday night in July 1993, Brock and his girlfriend (Juanice Elliot) went to a Lake City tavern and drank a six-pack of beer and a pint of gin. As the couple left the establishment early Saturday morning, Brock got into a fight outside, was beaten and hit on the head with a bottle, and received cuts that caused profuse bleeding. Blood was all over Brock's face and shirt and on his girlfriend's shirt. Brock was placed into a vehicle, and as the couple headed toward Lake Shore Hospital, the girlfriend flagged down Columbia County Deputy Sheriff Joseph R. Lucas and requested his assistance. After arriving at the hospital at 1:00 A.M., Brock collapsed to the ground outside and appeared to be unconscious and barely breathing. A second officer, Columbia County Deputy Sheriff David Wingate, was already at the hospital on an unrelated matter. The appellant appeared to be seriously injured and did not seem capable of walking on his own. Both deputies assisted medical staffers in wheeling Brock into the trauma room, where he was positioned on a gurney-type stretcher. Although he lay under a very bright surgical light, the appellant was unresponsive at first. Those who treated or assisted him were Dr. Lee Gibson, an emergency-room doctor; nurses Lorraine Williams and Leslie Berg-Hay; and Mark Hamilton, a respiratory therapist.
After the staff administered oxygen, Brock regained consciousness. Initially, he was calm and seemed coherent as he explained *993 what had happened. He told the deputies and the staff that "he had got jumped [sic] by some individuals," whom he threatened to "get." Brock's girlfriend said that he had indicated having been robbed. This period of calm was short-lived, for soon after being transported to the trauma room, Brock became agitated and combative, acting wild and screaming "Let me go!" Both deputies testified that the unexpected sight of blood on his girlfriend precipitated the appellant's uncontrolled, violent behavior. Brock became extremely upset and wanted to know who had done that to her. As staffers tried to insert an I.V. because of the loss of blood, Brock cursed them and flailed his arms and kicked with his legs. The appellant was very strong and fought vigorously as the two deputies, the doctor, and the male therapist all struggled to restrain his feet and arms to allow medical treatment. Brock took a free swing at the doctor but missed him.
Nurse Berg-Hay testified that during the struggle, Brock made a hawking noise and then lifted himself up and deliberately spat blood and mucus on Deputy Wingate. Other medical staffers and Deputies Lucas and Wingate concurred that the act was deliberate. Ms. Elliot, Brock's girlfriend, testified that the appellant did not spit until the deputy placed his arm around Brock's neck as a restraint. The appellant also spat blood upon Deputy Lucas' shoulder and upon some of the medical staffers. Deputy Lucas testified that as Brock struggled to free himself from the stretcher, his foot struck the side of Lucas' chest with sufficient force to tear a button off the deputy's shirt. Brock recognized that Wingate and Lucas were deputies because both men were in uniform, and Brock addressed them as officers.
Brock was charged by amended information with battery on the two law enforcement officers (spitting and kicking) pursuant to section 784.03 and 784.07, Florida Statutes, and with disorderly conduct (trying to spit on or fight the hospital staff), pursuant to section 877.03, Florida Statutes. Brock's defense at trial was that given his voluntary intoxication and head injuries, he had been unable to form the requisite specific intent to support the charges. The jury was instructed to consider voluntary intoxication. The appellant's girlfriend testified that Brock had become "drunk" after consuming alcohol before being injured and rushed to the hospital. Deputy Wingate smelled alcohol on Brock and stated that he acted like someone who was intoxicated.
The hospital staff created a medical record relating to the appellant's injuries, condition, and treatment. Prior to trial, the state moved in limine to prevent Brock from introducing evidence of intoxication, i.e., "any reference to the defendant's blood alcohol level in this case without the proper predicate being laid." Defense counsel announced the intent to adduce evidence explaining to the jury the meaning of "E.T.O.H.: .142" with two hospital records purportedly showing this to have been the appellant's blood alcohol level, a figure alleged to be well in excess of the legal standard. "E.T.O.H." refers to the chemical makeup of alcohol. Specifically, the defense sought to admit into evidence the hospital's "emergency record" sheet and a laboratory blood report to support its case regarding Brock's physical and mental condition at the time of the offenses. The trial court denied the state's motion subject to later exclusion.
After the close of the state's case-in-chief, defense counsel attempted to lay a predicate for admission of medical evidence under either the "purpose of medical diagnosis or treatment" or "business records" exception to the hearsay rule. Those respective statutes provide in pertinent part:
90.803 Hearsay exceptions; availability of declarant immaterial.___ The provision of s. 90.802 to the contrary notwithstanding, the following are not inadmissible as evidence, even though the declarant is available as a witness:
* * *
(4) STATEMENTS FOR PURPOSES OF MEDICAL DIAGNOSIS OR TREATMENT.Statements made for purposes of medical diagnosis or treatment by a person seeking the diagnosis or treatment, or made by an individual who has knowledge of the facts and is legally responsible for the person who is unable to communicate the facts, which statements describe medical *994 history, past or present symptoms, pain, or sensations, or the inceptions or general character of the cause or external source thereof, insofar as reasonably pertinent to diagnosis or treatment.
* * *
(6) RECORDS OF REGULARLY CONDUCTED BUSINESS ACTIVITY.___(a) A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinion, or diagnosis, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make such memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the sources of information or other circumstances show lack of trustworthiness. The term "business" as used in this paragraph includes a business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.
(b) No evidence in the form of an opinion or diagnosis is admissible under paragraph (a) unless such opinion or diagnosis would be admissible under ss. 90.701-90.705 if the person whose opinion is recorded were to testify to the opinion directly.
After the state repeatedly objected to Brock's efforts to admit into evidence the two medical reports, the defense proffered testimony of Nurse Williams, the treating nurse; and Joyce McGee, a medical records manager/custodian at Lake Shore Hospital. The trial court permitted the appellant to admit only the emergency room, but not the laboratory, report, after excising all references to alcohol or E.T.O.H. (and its effects) and the physician's unexplained diagnosis of Brock's condition as having been "beat on head [with a] pistol." After this adverse ruling, Brock moved for a continuance to enable him to bring in witnesses to testify about the blood alcohol test, which motion was denied.
Thus, two reports are at issue, the emergency room report, which shows the specific blood alcohol result and includes other information such as a diagnosis of "E.T.O.H. intoxication," and the laboratory report, which reported only the blood alcohol test result. Williams, the on-duty nurse during the incident, testified that she personally had assisted in the treatment process. She and the emergency-room physician, Dr. Gibson, prepared the emergency room report during and after treating Brock.
On proffer, Williams testified that the doctor had ordered the blood alcohol test as part of his treatment of the appellant. The nurse noted that Brock's specific blood alcohol level appears in the section labeled "physician's evaluation." Dr. Gibson diagnosed "E.T.O.H. intoxication" and wrote "altered mental status" in his evaluation of Brock on the emergency record. Williams described Brock's condition at the hospital as "disoriented and confused." Although she opined that "E.T.O.H.: .142" is "not a high alcohol [level]," Williams added that alcohol's depressant effects could affect the vital signs as well as the decisions of whether and how to medicate the patient. The nurse had no reason to question the correctness of the blood alcohol figure. She testified that where head injuries are present, the blood alcohol level is relevant and very useful to determine a patient's level of unconsciousness and to distinguish whether the source of unconsciousness comes from the alcohol intake or the head injuries. If the blood alcohol level is high enough, it can affect the decisions of how to treat and when to discharge a patient. Williams identified the physician's handwriting and signature and her own signature on the emergency record. The nurse testified that the emergency report was kept in the regular course of the hospital's business, and it is the hospital's regular practice to send such emergency records to the emergency-room clerk for inclusion among the medical records.
Williams stated that after the delivery of the blood sample taken from the appellant, the blood alcohol test would have been done by the hospital's own laboratory by someone acting within the course of regular hospital business. Williams had no reason to believe that the test result is erroneous. In administering treatment, the medical staff routinely relies on a doctor's orders that are placed in *995 the medical record. Williams noted that the blood alcohol level shown on the emergency report is relevant for medical personnel to determine the proper course of treatment. Williams conceded that occasionally, such as when testing equipment breaks down, the hospital sends out the blood work to another laboratory.
The hospital's manager of medical records and records custodian, Ms. McGee, testified on proffer that the emergency room report had been made at or near the time of the reported events and had been kept in the ordinary course of business as a regular practice of Lake Shore Hospital. She indicated that the medical staff routinely relies on such records. McGee believed that the laboratory test had been performed by the hospital's laboratory, rather than sent out, because the results appeared on the hospital's routine laboratory forms and were kept in the medical records department. She found absolutely no indication that the laboratory testing had been performed elsewhere. McGee was not asked whether the laboratory report is of a kind regularly kept in the course of a regular business activity.
After the proffer, the defense renewed its efforts to admit the emergency record and the laboratory report as relevant hearsay exceptions. In opposition, the appellee argued that the medical personnel had not relied on the test results and that the evidence was irrelevant, that the hearsay exceptions were inapplicable, and that the defense had failed to lay a proper predicate. Specifically, the state asserted that an adequate predicate would require the testimony of the laboratory technicians who had drawn and tested the blood, any persons who could establish the chain of custody of the blood, and others (as necessary) to establish the accuracy of the test. Relying in part on the district court's opinion in Love v. Garcia, 611 So.2d 1270 (Fla. 4th DCA 1992), the lower court determined that the proffer generated enough uncertainty to render the blood alcohol test results untrustworthy and inadmissible under the "business records" exception.
We disagree, having concluded that the supreme court's holding in Love, 634 So.2d at 158, supports the appellant's position. In fairness to the able trial judge, we note that at the time of trial, the participants did not have the benefit of the supreme court's subsequent (February 1994) opinion quashing the Fourth District Court's decision. After filing the motion for new trial, defense counsel relied in part on the supreme court's very recent opinion in Love to support the appellant's request for relief. The trial court found the case to be factually distinguishable and noted on the record that Love does not address whether it is to be applied to proceedings, like the case sub judice, that were ongoing on the date of Love's issuance.
Love arose from an incident where pedestrian Garcia, while attempting to cross an intersection at night, was struck and hurt by an automobile driven by Love. An independent eyewitness, Caviness, indicated that Garcia had appeared to stumble as she walked across the street, had looked upset, and had dressed in dark clothing. Caviness' deposition testimony stated that Garcia had appeared to be under the influence of alcohol, but this opinion was not heard by the jury. At trial, Love attempted to introduce, as business records, the results of Garcia's two blood alcohol tests. Garcia challenged the accuracy, reliability, and trustworthiness of the tests and filed a motion in limine to exclude the results; the trial court agreed with Garcia and granted the motion. Apparently, the trial judge was concerned because the doctor had not relied on the blood alcohol result, and because a police officer had ordered one test and an undetermined person had ordered the other test.
The Fourth District Court, on rehearing en banc, held that, pursuant to section 90.803(6), Florida Statutes, in those instances where the challenging party makes a sufficient showing that relates to the accuracy, reliability, or trustworthiness of medical record entries, the trial court may require the proponent of the evidence to lay a proper predicate relating to "the drawing of the blood, the chain of custody, the administration of the test, and the interpretation and reporting of the test result." Love v. Garcia, 611 So.2d 1270, 1276 (Fla. 4th DCA 1992). The "business records" statute was construed to allow a trial judge, considering *996 "bare testing data in a hospital chart," to "conclude that the test result or chart entry requires the additional circumstance of testimony from a qualified expert to establish its use in the case." Id. at 1276. The district court stated:
In a medical records case, the trustworthiness element___the only basis for business records admissibility___relates to whether the health care providers relied on the test result in the course of treatment.
Id. at 1275. The supreme court characterized this statement as "a flawed interpretation of the business record hearsay exception," and it quashed the decision below. 634 So.2d at 160.
Love sets out the following procedure to be followed. If a laboratory or hospital records custodian or other qualified witness establishes a proper predicate under section 90.803(6), Florida Statutes, "the burden is on the party opposing the introduction to prove the untrustworthiness of the records. If the opposing party is unable to carry this burden, then the record will be allowed into evidence as a business record" subject, of course, to the test of relevancy. Id. Under the statutory hearsay exception, "the trustworthiness of medical records is presumed." Id.; Phillips v. Ficarra, 618 So.2d 312, 313 (Fla. 4th DCA 1993). "Actual reliance on the test in each course of treatment is not required," for "[s]uch trustworthiness is based on the test's general acceptance in the medical field and the fact that the test in question is relied upon in the scientific discipline involved." Love, 634 So.2d at 160; Andres v. Gilberti, 592 So.2d 1250, 1252 (Fla. 4th DCA 1992). Finding it possible that, given the opportunity, Love could have laid a proper predicate through the testimony of SmithKline and hospital records custodians, the supreme court held that it was reversible error to deny that opportunity. The cause was remanded for further proceedings. Love, 634 So.2d at 160.
The reasoning underlying Love is that where medical professionals generally rely on the test results, courts too are permitted to rely on the medical records' trustworthiness. Additionally, the proponent of evidence such as a laboratory report is not necessarily required to produce an actual laboratory technician to testify. The supreme court held that a records custodian will suffice. Love, 634 So.2d at 160; Davis v. State, 562 So.2d 431 (Fla. 1st DCA 1990) (presumably trustworthy laboratory report of urine sample testing positive for cocaine qualified as a business record upon testimony of the laboratory toxicologist supervisor, given as custodian of records, even though the actual conductor of the test was not called to testify).
Given the benefit of the supreme court's pronouncement in Love, we conclude that the nurse on duty (Ms. Williams) and the hospital records custodian (Ms. McGee) laid a proper predicate for admitting the emergency room report, including the references to blood alcohol level and intoxication. Although the testimony relating to the laboratory report is relatively less complete, we find it is merely cumulative and sufficient, under the circumstances, to comport with the requirements of the hearsay exception and Love. See Davis, 562 So.2d at 431. Given the presumed trustworthiness of the medical records, the state then had the burden to "prove the untrustworthiness of the records," such as by putting on laboratory technicians or experts to challenge the actual administration of the test. 634 So.2d at 160. The proceedings at the trial level never got that far.
Love compels the conclusion that the trial court abused its discretion in ruling that the appellant had failed to lay an adequate predicate, in support of his voluntary intoxication defense, with the emergency room and laboratory records. Accordingly, we reverse and remand for a new trial. Although the lower tribunal's ruling was based partly on the absence of any express statement by the supreme court making their holding in Love retrospective, we find such omission to be of no import. Rather than affect substantive rights, Love simply reiterated what is required to satisfy the "business records" hearsay exception, and it merely corrected the district court's misconstruction of the statutory requirements for laying a predicate for admission of such records.
In his second issue, the appellant argues that the trial court erred in permitting *997 the state, over an objection, to introduce "irrelevant and highly prejudicial evidence of Brock's character, essentially portraying him as a thief and a liar." During cross-examination, referring to the incident that had led to the appellant's trip to the hospital, the prosecutrix asked Brock's girlfriend, "Do you know why the defendant was beaten up by those people?" Ms. Elliot's response was "Yes. He had took [sic] something from them." Defense counsel objected on the basis of relevancy and was overruled. We find no abuse of discretion. On direct examination, defense counsel inquired about the girlfriend's observations of what had happened to Brock. Specifically, counsel asked about "an altercation with some people" in which Brock was struck on the head with a bottle and was injured. We conclude that defense counsel opened the door to the specific subject about which the appellant now complains. Having examined the record, we note that the reason for the fight outside the tavern never became a feature at trial, and counsel never mentioned the matter again. Error, if any, would be harmless beyond a reasonable doubt. State v. DiGuilio, 491 So.2d 1129 (Fla.1986). The appellant's remaining issues relate to sentencing and, therefore, need not be addressed in light of our holding.
REVERSING and REMANDING for a new trial.
BOOTH, MINER and MICKLE, JJ., concur.