571 So.2d 1341 (1990)
THUNDERBIRD DRIVE-IN THEATRE, INC., and Florida Drive-in Theatre Management, Inc., Appellants,
v.
Ronald L. REED, Incompetent, by and through Calvin Reed and Joyce REED, His Legal Guardians and Next Friends, Robert F. Coyman, Jeanne Coyman and Christopher Todd Coyman, Appellees.
No. 88-0253.
District Court of Appeal of Florida, Fourth District.
October 3, 1990.
Rehearing Denied November 26, 1990.
*1342 Bonita L. Kneeland of Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, and Alberto A. Macia and H. Jack Klingensmith of Shea & Gould, Miami, for appellants.
Fenster and Faerber, P.A., Plantation, Larry Klein and Jane Kreusler-Walsh of Klein & Walsh, P.A., West Palm Beach, for appellees.

ON MOTION FOR REHEARING
PER CURIAM.
Appellees' motion for rehearing is granted and our original opinion is vacated and replaced by the following opinion.
Appellants, Thunderbird Drive-In Theatre, Inc., and Florida Drive-In Theatre Management, Inc., (the Theatre) appeal from a final judgment and order taxing costs arising out of a suit for personal injuries resulting from a motor vehicle accident.
On June 23, 1985, a motorcycle driven by the plaintiff, Ronald Reed, collided with a pickup truck driven by appellee, Christopher Coyman. The accident occurred on Sunrise Boulevard, in Fort Lauderdale, Florida, near the entrance to the Thunderbird Drive-In Theatre. At the time of the accident, Reed was operating his motorcycle westbound on Sunrise Boulevard. He had stopped at a traffic light at the intersection of Northwest 31st Avenue and Sunrise, approximately one-tenth of a mile east of the entrance to the theatre. He then proceeded west on Sunrise toward the entrance to the theatre, which was located on the north side of Sunrise Boulevard. At the same time, Christopher Coyman, driving a pickup truck, had been proceeding east on Sunrise Boulevard. He attempted to make a lefthand turn across the westbound lanes of Sunrise Boulevard into the theatre but was unable to make it completely across Sunrise and Reed ran into the side of Coyman's truck.
At the theatre location Sunrise Boulevard has three eastbound lanes, plus a left turn lane, and three westbound lanes. There was evidence that the northernmost lane of the westbound traffic had cars lined up waiting to turn into the theatre, as did the left turn lane of the eastbound traffic. Coyman saw an opening in the theatre entrance and pulled around the lead car in the left turn lane and attempted to cross Sunrise, but was unable to do so because another car moved into the theatre entrance. This left Coyman in the path of Reed's motorcycle resulting in the collision.
Visibility was never an issue. There was nothing obstructing the view of either of the parties to the collision, yet Coyman said he never saw the motorcycle. The cycle laid down forty-two feet of skid marks and its speed was variably estimated at between forty-five and eighty-three miles per hour.
Reed was taken to Plantation Hospital severely injured. While there, blood was taken from him and the test results reflect that he had a blood alcohol level of .237 and a high positive marijuana presence in his urine.
At trial, Reed contended that the Theatre was negligent in the design and maintenance of the entrance to the theatre; that *1343 this negligence caused traffic to build up on Sunrise creating a known dangerous condition; that the Theatre failed to ameliorate this dangerous condition by hiring additional police personnel to supervise the traffic; and that such negligence caused or contributed to the cause of the accident. In addition to the charges of negligent design and operation of the theatre entrance, Reed contended that the resulting traffic congestion on Sunrise Boulevard without hiring any police personnel to improve traffic flow constitutes a violation of section 316.2045(1), Florida Statutes (1987), which makes it unlawful to willfully "obstruct the free, convenient, and normal use of any public street, highway, or road by impeding, hindering, stifling, retarding, or restraining traffic or passage thereon, by standing or approaching motor vehicles thereon, or by endangering the safe movement of vehicles or pedestrians traveling thereon... ."
The Theatre contended that there had been no prior accidents or governmental complaints about its operation of the facility and that a slowdown in traffic by congregation of its customers in the highway did not impose liability on it as a property owner. Furthermore, the Theatre argues that, even if it were negligent, that negligence was not the proximate cause of the accident; rather, Coyman's negligent turn in front of Reed was the proximate cause thereof.
The jury returned a verdict in favor of the plaintiffs for $6,500,000. In addition, they found the Theatre 25% negligent, Reed 25% negligent, and Coyman 50% negligent. From a final judgment against all of the defendants in the amount of $4,875,000, the Theatre has perfected this appeal.
The first point presented by the Theatre for our consideration raises the question of whether it, as a property owner adjacent to a busy public highway, is liable for the accident in question. The Theatre, of course, contends that it was not negligent in any fashion, or, if negligent, that such negligence was not the proximate cause of the accident involved herein. It points to the evidence that showed that it did not directly obstruct the visibility of any motorists, nor create any obstruction on the roadway, and that there is no evidence of prior accidents or complaints by any governmental authority. Nevertheless, the Theatre could not deny, and the jury could certainly find on this record, that it was aware on the evening in question that traffic was building up in the curb lane of the westbound traffic and in the left turn lane of the eastbound traffic as a result of its patrons waiting to enter the theatre grounds. There is no suggestion that this condition was any different than that which usually transpired there when seven different movies commenced at the same time, including the attraction of an early bird special for those arriving between 7:30 and 8:00 p.m. Thus, if a jury could find that the congestion created on the highway at the entrance to the theatre on this busy public thoroughfare creates a dangerous condition vis-a-vis the movement of traffic, the trier of fact could find negligence which, if it contributed to the cause of the accident, would result in liability. Whether the suggested danger is foreseeable is a jury question. Kaisner v. Kolb, 543 So.2d 732 (Fla. 1989); Gibson v. Avis Rent-A-Car System, Inc., 386 So.2d 520 (Fla. 1980). One can conclude from this record that the Theatre was on notice that privately-hired police are necessary to handle large crowds of cars and people. This conclusion is evidenced by the fact that the Theatre hired private police to direct traffic on the property during movie showings, and that whenever they operated a Swap & Shop event, an event which generated a large crowd, they also hired police to direct traffic out on the highway. In view of the totality of the evidence regarding what transpired here, we believe the answer to the Theatre's first point is set forth in the following quotation from the recent case of Kaisner v. Kolb, wherein the court stated:
There is a strong public policy in this state that, where reasonable men may differ, the question of foreseeability in negligence cases should be resolved by a jury. Vining v. Avis Rent-A-Car Systems, Inc., 354 So.2d 54, 56 (Fla. 1977). Where a defendant's conduct creates a foreseeable zone of risk, the law generally will recognize a duty placed upon defendant *1344 either to lessen the risk or see that sufficient precautions are taken to protect others from the harm that the risk poses. See Stevens v. Jefferson, 436 So.2d 33, 35 (Fla. 1983) (citing Crislip v. Holland, 401 So.2d 1115, 1117 (Fla. 4th DCA), review denied sub nom. City of Fort Pierce v. Crislip, 411 So.2d 380 (Fla. 1981)).
Id. at 735-736.
The Theatre makes a strong argument that, even if it were negligent in the design of its entryway or in the operation of its premises, that negligence did not cause this accident. The sole proximate cause, according to the Theatre, was the negligence of Coyman in turning into the path of the oncoming traffic when such traffic was clearly visible. Once again, the jury could well have found on this record that Coyman was solely at fault, but it could also find, and did find, that the Theatre actually contributed to the causation of the accident in a proximate way.
We next consider the Theatre's contention that the trial court committed reversible error in giving appellees' requested jury instruction based upon section 316.2045(1), Florida Statutes (1987), which states:
It is unlawful for any person or persons willfully to obstruct the free, convenient, and normal use of any public street, highway, or road by impeding, hindering, stifling, retarding, or restraining traffic or passage thereon, by standing or approaching motor vehicles thereon, or by endangering the safe movement of vehicles or pedestrians traveling thereon.
It is not unlawful conduct to do those things proscribed by the above statute unless one does them "willfully." We believe that connotes something more than doing those things knowingly. Appellees rely for support on the case of Bolton v. Smythe, 432 So.2d 129 (Fla. 5th DCA 1983), in which the willful aspect of the statute was satisfied by the fact that the defendant landowner knew, or had reason to know, that his lawn sprinkler, which was spraying water onto the roadway and windshields of passing vehicles, was creating a hazardous condition. As we pointed out above in discussing the Theatre's first point, the jury could find that the Theatre knew the traffic was congesting in the westbound curb lane and eastbound left turn lane, but did not cause that to happen intentionally. As a matter of fact, it would be contrary to the Theatre's best interest to have the traffic congestion as opposed to a smooth traffic flow, with no waiting, into the theatre grounds. In King v. Eastern Airlines, Inc., 536 So.2d 1023, 1027 (Fla. 3d DCA 1987), the court presented a definition of willful misconduct as "the intentional performance of an act with knowledge that the ... act will probably result in injury or damage" or as "reckless disregard of the consequences" or as "a deliberate purpose not to discharge some duty necessary to safety." In Smith v. Sno Eagles Snowmobile Club, Inc., 823 F.2d 1193, 1198 (7th Cir.1987), the court referred to the following definition of willful conduct:
Prosser and Keeton, authorities on torts, have stated that the "usual meaning" assigned to "willful" (as well as reckless and wanton) "[i]s that the actor has intentionally done an act of an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow ..." Prosser and Keeton Handbook of the Law of Torts § 34 at 213 (5th ed. 1984). Prosser and Keeton's definition of willfulness requires that three elements be established: (1) the actor do an intentional act of an unreasonable character (2) in disregard of a known or obvious risk that was great (3) as to make it highly probable that harm would follow.
Thus, we perceive that the use of the word "willfully" requires something more than mere knowledge or awareness. Rather, it requires intent and purpose that the act or condition take place. Furthermore, the three elements referred to in Sno Eagles, while found in Bolton, are missing in this case in which nothing more than the Theatre's awareness of the condition can be established. As a consequence, we hold the statute was not applicable based upon the evidence presented in this case. Since, of course, that instruction was followed by the standard jury instruction that violation *1345 of a traffic regulation is evidence of negligence, we are unable to say that giving that erroneous instruction was harmless error. The obvious prejudice that accrues to the Theatre makes the error reversible.
In its final point the Theatre assigns as error the refusal of the trial court to admit parts of the hospital record of Reed's confinement, the court's refusal to allow it to proffer evidence laying a foundation to admit the hospital record, and the refusal to allow it to call several treating doctors as witnesses or to cross-examine them relative to their knowledge and use of the blood test results contained in the hospital records.
It appears that, after his arrival at the hospital on the night of the accident, two blood samples were taken from Reed. Lab reports of the tests appear in the hospital records reflecting a blood alcohol level well in excess of .20 and a positive high level of marijuana. The Theatre attempted to call the Plantation hospital records custodian as a witness to authenticate the records and lay the necessary foundation for their admissibility. However, appellees objected on various grounds to the custodian as a witness and, thus, the Theatre was never able to lay the appropriate foundation to admit said records. The report of laboratory blood test results performed in a hospital and contained in a patient's hospital record is generally admissible in evidence when the appropriate foundation is laid by a qualified person such as a hospital records custodian, pursuant to section 90.803(6), Florida Statutes (1987). The statute provides that a record, such as a laboratory report made at or near the time of the event recorded, by a person with knowledge, in the regular course of business and as a regular practice of the hospital's business activity, all of which is shown by the testimony of the custodian or other qualified witness, is admissible in evidence unless the source of information or other circumstances show lack of trustworthiness.
In the present case, while the first laboratory report furnished by a laboratory outside the hospital may not have been admissible through the testimony of the records custodian, Kurynka v. Tamarac Hospital Corporation, 542 So.2d 412 (Fla. 4th DCA 1989), the second report contained in the Plantation Hospital record appears to be the record of that hospital's lab report and, for aught we know, was subject to being admitted through the testimony of the records custodian. That point was not reached in this case because the trial court sustained an objection to the custodian's testimony before she reached the point of laying a proper predicate for its admissibility. Furthermore, the trial court refused to allow appellants to make a proffer of the custodian's testimony. Ordinarily, where the court refuses to allow a proffer, it prevents a determination of the propriety of the trial court's ruling by the reviewing court and is prejudicial to the party making the proffer and generally is reversible error. Davis v. Pfund, 479 So.2d 230 (Fla. 3d DCA 1985); Cason v. Smith, 365 So.2d 1042 (Fla. 3d DCA 1978); Musachia v. Terry, 140 So.2d 605 (Fla. 3d DCA 1962). While there may be situations where the preclusion would constitute harmless error, this is certainly not one of them. The question of Reed's contribution to the cause of his unfortunate accident weighed heavily in the determination of this case and the attribution of fault among the parties. Without evidence of Reed's alleged intoxication, the jury did not consider a factor that is generally critical in these cases and the appellees, as they had a right to do considering the status of the record, took full advantage of the absence of that evidence when, during the final argument, appellees' counsel told the jury:
My client had a beer earlier in the afternoon. That's not a subject of suspicion. If my client was impaired there would have been testimony to this fact. You heard no evidence as to that. When it comes to that part of it you have to reject comparative negligence.
Accordingly, the judgment is reversible on this point also.
In view of the foregoing, we find reversible error demonstrated in the Theatre's Points II and III, and thus reverse the judgment against the Theatre and remand the cause for a new trial as to appellants.
DOWNEY and WARNER, JJ., concur.
*1346 WESSEL, JOHN D., Associate Judge, concurs in part and dissents in part with opinion.
WESSEL, JOHN D., Associate Judge, concurring in part and dissenting in part.
I concur in the opinion of the majority on the issue of foreseeability in Point I. However, on the issues in Points II and III, I would also affirm. The issue of "willfulness" is not a question of law, as decided by the majority, but one of fact which the jury resolved adversely to the appellant. In addition to the legal authority cited by the majority, see Morales v. Costa, 427 So.2d 297 (Fla. 3d DCA 1983), Armas v. Metropolitan Dade County, 429 So.2d 59 (Fla. 3d DCA 1983), and Sullivan v. Silver Palms Properties, Inc., 558 So.2d 409 (Fla. March 8, 1990), for affirming the trial court on Point II, on the issue of "willfulness."
Point III is an invalid attempt to use the business records exception to the hearsay rule as a conduit for the admissibility of evidence inadmissible under the presentment in this case. Department of Corrections v. Williams, 549 So.2d 1071 (Fla. 5th DCA 1989); Kurynka v. Tamarac Hospital, 542 So.2d 412 (Fla. 4th DCA 1989).