SHEVIN, Judge.
Miami-Dade County appeals a final order of the State of Florida Department of Envi *514 ronmental Protection [FDEP] approving the eligibility of Sekoff Investments, Inc. [Sek-off], to participate in the Florida Drycleaning Contamination Cleanup Program [Cleanup Program]. § 376.3078, Fla. Stat. (1995). We affirm.
Sekoff owns the property where Redd’s Cleaners, a'dry-cleaning establishment, had been operating. FDEP granted Sekoff eligibility to participate in the Program. The County petitioned FDEP for an administrative hearing to contest Sekoffs eligibility. The County contended that Sekoff had committed gross negligence, as defined in section 376.3078(3)(c), because Sekoff was in “willful violation of local law ... regulating the operation of drycleaning facilities,” for failure to comply with the County’s cleanup requests. The County maintained that this gross negligence disqualified Sekoff from participating in the Cleanup Program and enjoying statutory immunity from County enforcement efforts. § 376.3078(3). The hearing officer granted Sekoffs motion to intervene as an additional respondent. The County and Sek-off filed a Joint Statement of Undisputed Material Facts that stated:
8. On March 15, 1994, Dade County issued Redd’s Cleaners and Sekoff a Notice of Violation and Orders for Corrective Action (“NOV”). Exhibit A. The NOV stated that the presence of dryeleaning solvents in the septic tank and storm drain/soakage pit violated Sections 24-11, 24-13, 24-14, 24-26, and 24-55, Metropolitan Dade County Code, and ordered Redd’s Cleaners and Sekoff to submit a formal plan for the assessment and cleanup of the drycleaning solvent contamination. The cited provisions of the Dade County Code generally provide that it is unlawful to throw, drain, run, seep, or otherwise discharge industrial or liquid wastes into septic tanks, sewers, or waters of the County; to cause or maintain a nuisance or sanitary nuisance as defined by the Metropolitan Dade County Code; or to violate any provision or condition of an operating permit.
9. Sekoff hired the environmental consulting firm, REP Associates, Inc., which ;prepared and submitted to Dade County a Contamination Assessment Plan (“CAP”) dated April 21, 1994 Exhibit B. By letter dated May 5, 1994, Dade County approved the CAP with modifications, and required the immediate pump out and disposal of the contaminated contents of the septic tank and storm drain/soakage pit. Exhibit C.
10. In May and June, 1994, Sekoff began collecting soil, groundwater, and sediment samples from the septic tank and storm drain, and installed a groundwater monitoring well, as required by the CAP. Exhibit D. The test results disclosed the presence of drycleaning solvents in the soils and groundwater at the Sekoff property. The contaminants in the septic tank and storm drain/soakage pit were a source or a likely source of soil and groundwater contamination at the facility.
11. On May 8, 1994, FDEP announced it was suspending all enforcement actions against drycleaning facilities based on the Legislature’s anticipated passage of the Florida Drycleaning Solvent Contamination Cleanup Act (“Drycleaning Act” or “Act”)[§ 376.3078], discussed below. Exhibit E.
12. On June 3, 1994, the Dryeleaning Act became effective.
13. On August 23, 1994, Dade County mailed Sekoff and Redd’s Cleaners a Final Notice Prior to Court Action stating that they were not in strict compliance with the deadlines set forth in the NOV. Exhibit F.
14. On September 22, 1994, Sekoff submitted to Dade County a Report of Sampling and Analysis summarizing the results of the work performed in May and June, 1994. Exhibit D. By letter dated September 23, 1994, Sekoff further advised Dade County that it would be applying for participation in the Drycleaning Solvent Contamination Cleanup Program as soon as FDEP promulgated the necessary implementation rules. Sekoff proposed that the County approve a no further action plan pending its notice of eligibility under the Drycleaning Act. Exhibit G.
15. By letter dated September 30, 1994, Dade County disapproved Sekoffs no further action plan. Dade County again *515 notified Sekoff and Redd’s Cleaners that it must immediately remove and dispose of the contents of the septic tank and storm drain. Exhibit H.
16. In December, 1994, Sekoff evicted Redd’s Cleaners. Since that date, the former drycleaning facility has remained vacant.
17. On July 18, 1995, Sekoffs environmental consultants removed and 'properly disposed of the contents of the septic tank and storm drain. On October 3, 1995, Sekoffs consultants advanced new soil bor-ings and installed a new groundwater monitoring well. Groundwater samples were collected on October 24, 1995. On February 21,1996, Sekoff submitted its Contamination Assessment Report Addendum to Dade County, summarizing the results of the work performed in July and October, 1995 and requesting a monitoring only plan (“MOP”). Exhibit I. By letter dated February 19, 1996, Dade County disapproved Sekoffs proposed MOP. Exhibit J.
18. In March 1996, FDEP began to accept applications for the Drycleaning Solvent Contamination Cleanup Program. Sekoff submitted its application for Redd’s Cleaners on March 8, 1996. By letter dated June 11, 1996, FDEP approved Sek-offs application and determined that the Redd’s drycleaning facility is eligible to participate in the State program. Exhibit K.
Joint Statement of Undisputed Material Facts, (R-102-05)(emphasis added).
The hearing officer entered a recommended order based on stipulated facts, exhibits, and written argument, § 120.569(1), Fla. Stat. (1997), recommending that Sekoff be found eligible to participate in the Program. In the recommended order, the hearing officer, relying on the definition of “willful” in Thunderbird Drive-In Theatre, Inc. v. Reed, 571 So.2d 1341, 1344 (Fla.App. 4th DCA 1990)(willful “requires intent and purpose that the act or condition take place”), review denied, 577 So.2d 1328 (Fla.1991), concluded that Sekoffs actions were not unreasonable and not willful in view of the legislature’s enactment of section 376.3078.[1] The FDEP adopted the recommended order, and affirmed Sekoffs eligibility. The County appeals.

I. Standard of Review

Section 120.68, Florida Statutes, provides the parameters for reviewing FDEP’s order. The County’s Petition was heard based on a stipulated fact statement; therefore, FDEP resolved no issues of fact. For this reason, this court can set aside FDEP’s order only “if it finds that: ... The agency has erroneously interpreted a provision of law [section 376.3078,] and a correct interpretation compels a particular action[.]” § 120.68(7)(d), Fla. Stat. (1997). “[W]e may reverse any erroneous interpretation of law, whether or not the error rises to a level of materiality, so long as the correct interpretation compels a particular action.” Schrimsher v. School Bd. of Palm Beach County, 694 So.2d 856, 861 (Fla. 4th DCA), review denied, 703 So.2d 477 (Fla.1997).
We are not unmindful, however, that “the administrative construction of a statute by the agency charged with its administration should not be disregarded or overturned by a reviewing court except for most cogent reasons and unless clearly erroneous.” Department of Health & Rehab. Servs. v. A.S., 648 So.2d 128, 132 (Fla.1995). “[A] reviewing court must defer to an agency’s interpretation of an operable statute as long as that interpretation is consistent with legislative intent and is supported by substantial, competent evidence.” Martinson v. Breit’s Tower Serv., Inc., 680 So.2d 599, 599 (Fla. 3d DCA 1996); Nelson v. Dade County Aviation Dept., 616 So.2d 56, 57 (Fla. 3d DCA 1993). In this ease, FDEP has the authority to interpret section 376.3078, which *516 details eligibility for participation in the Cleanup Program. See Public Employees Relations Comm. v. Dade County Police Benevolent Ass’n, 467 So.2d 987, 989 (Fla.1985).

II. Drycleaning Facilities Restoration Statute: Section 376.3078, Florida Statutes

In enacting section 376.3078, and creating the Cleanup Program, the legislature declared that
(a) Significant quantities of drycleaning solvents have been discharged in the past at dry-cleaning facilities as part of the normal operation of these facilities.
(b) Discharges of drycleaning solvents at such drycleaning facilities have occurred and are occurring, and pose a significant threat to the quality of the groundwaters and inland surface waters of this state.
(c) Where contamination of the groundwater or surface water has occurred, remedial measures have often been delayed for long periods while determinations as to liability and the extent of liability are made, and such delays result in the continuation and intensification of the threat to the public health, safety, and welfare; in greater damage to the environment; and in significantly higher costs to contain and remove the contamination.
§ 376.3078(1). Upon being granted eligibility to participate in the Cleanup Program, the property owner becomes immune from “administrative or judicial action brought by or on behalf of any state or local government or agency_” § 376.3078(3). A contaminated drycleaning facility is eligible to participate in the Cleanup Program provided the facility was not operated in a grossly negligent manner. Section 376.3078(3)(e) defines gross negligence as, inter alia, “a willful violation of [a] local ... rule regulating the operation of drycleaning facilities....”[2]
The County contested Sekoffs eligibility on the basis that Sekoff allegedly willfully violated local rules regulating operations of drycleaning facilities by failing to comply with the County’s NOV cleanup requests.[3] The County urges that FDEP’s order improperly defined “willful violation” and in so doing violated the legislative intent behind section 376.3078. We disagree with this construction. We find that FDEP properly defined “willful violation” and find that Sekoffs conduct does not amount to a “willful violation” of a rule regulating drycleaning faeilities’s operations.
In interpreting statutory terms, words must be given their plain and ordinary meaning. See Gar-Con Dev. v. Department of Environmental Regulation, 468 So.2d 413 (Fla.App. 1st DCA), review denied, 479 So.2d 117 (Fla.1985). Although the legislature did define “gross negligence” in section 376.3078(3)(c), it did not define “willful violation.” In construing an undefined term, we must look to the common or usual meaning of the term. State Dept. of Administration v. Moore, 524 So.2d 704 (Fla. 1st DCA 1988). The hearing officer relied on the definition of “willful violation” in Thunderbird Drive-In, and FDEP adopted this definition. The court in Thunderbird Drive-In, relied on W. Page Keeton, et al., Prosser & Keeton Handbook of the Law of Torts § 34, at 213 (5th ed.1984), in concluding that the usual meaning assigned to “willful” “[i]s that the actor has intentionally done an act of an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow....” Thunderbird Drive-In, 571 So.2d at 1344 (quoting Smith v. Sno Eagles Snowmobile Club, Inc., 823 F.2d 1193 (7th Cir.1987)). Thus, the Thunderbird Drive-In court concluded that when the legislature uses the word “willful” in a statute it' demonstrates the legislature’s intention that the actor possess “more than mere knowledge or aware *517 ness” for the statute to be applicable. Thunderbird Drive-In, 571 So.2d at 1344.
Although the County derides FDEP’s use of the Thunderbird Drive-In definition, ap-pellees correctly observe that the County offers no alternative definition that it deems more appropriate. The Thunderbird Drive-In definition is not an unusual or extraordinary interpretation of the term “willful.” Black’s Law Dictionary defines “willful” as:
An act or omission is ‘willfully’ done, if done voluntarily and intentionally and with the specific intent to do something the law forbids, or with the specific intent to fail to do something the law requires to be done; that is to say, with bad purpose either to disobey or to disregard the law.
Black’s Law Dictionary 1434 (5th ed.l979)(same definition at 1599 (6th ed.1990)). This definition mirrors the Thunderbird Drive-In definition.
Other courts have ascribed to a similar definition of “willful violation.” In Hazen Paper Co. v. Biggins, 507 U.S. 604, 617, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993), the Supreme Court determined that a “willful” violation, as the term is used in federal statutes, requires a showing that the actor “either knew or showed reckless disregard for the matter of whether its conduct was prohibited.... ” This definition conveys the same idea that the act be intentional and accompanied by the “actor’s intent and purpose that the prohibited conduct take place.” Thunderbird Drive-In, 571 So.2d at 1344. This definition has been applied to other statutory schemes. See McLaughlin v. Richland Shoe Co., 486 U.S. 128, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988); Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985); United State v. Baldwin, 770 F.2d 1550 (11th Cir.1985), cert. denied, 475 U.S. 1120, 106 S.Ct. 1636, 90 L.Ed.2d 182 (1986), and state statutes, see Lewek v. State, 702 So.2d 527 (Fla. 4th DCA 1997). We therefore hold that FDEP did not err in applying this definition to the term “willful violation.”
Also, FDEP correctly concluded that Sekoff s conduct was not a willful violation of County contaminated remediation ordinances. The Stipulated Statement Of Facts demonstrates that Sekoff acted immediately on the County’s NOV. Sekoff submitted a formal plan to the County 22 days after the NOV as ordered therein. Sekoff continually apprised the County of its progress and drained the septic tank and storm drain as the County requested. Sekoff did not disregard the NOV. The County may have wished that Sekoff had acted quicker, but Sekoffs behavior did not amount to “disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow_” Thunderbird Drive-In, 571 So.2d at 1344 (quoting Smith, 823 F.2d at 1198).
Furthermore, we are unpersuaded by the argument that this definition violates the legislative intent behind section 376.3078. In enacting 376.3078 the legislature realistically acknowledged that “[discharge of dryclean-ing solvents at such drycleaning facilities have occurred and are occurring _” § 376.3078(l)(b), Fla. Stat. (1995)(emphasis added). The legislature declared that “remedial measures have often been delayed for long periods while determinations as to liability and the extent of liability are made ....” § 376.3078(l)(e), Fla. Stat. (1995). In so finding, the legislature expressed its sense of urgency in promoting remediation — even to the extent of conferring immunity on Cleanup Program participants.
The legislature expressly extended this immunity to facilities “at which there exists contamination,” § 376.3078(3)(a), (b), Fla. Stat. (1995)(Emphasis supplied). The legislature’s express inclusion of facilities that have existing contamination contradicts the County’s argument that remediating existing contamination is a condition precedent to eligibility in the Cleanup Program. No such requirement was written into the statute. FDEP was not obligated to create such a requirement. We will not create one here.
Additionally, the legislature expressly stated that section 376.3078 was to be liberally construed to effect the purposes stated therein. § 376.315, Fla. Stat. (1995). To adopt the County’s reasoning would be to eliminate from Cleanup Program participation all facilities with existing contamina *518 tion. This is contrary to the express legislative purpose. We decline to endorse such a contradictory interpretation.
In view of our holding that FDEP did not apply an improper definition to the term “willful violation,” and did not err in finding that Sekoffs behavior was not willful, we affirm FDEP’s final order.[4]

III. Third District Court of Appeal Precedent

We are also unpersuaded by the County’s argument that affirming FDEP’s order disregards precedent from this court. This court has addressed the scope of the immunity under section 376.3078 in two cases; neither case, however, tested the propriety of an FDEP order awarding a facility eligibility for participation in the Cleanup Program.
In Food Spot Corp. v. Renfrow, 668 So.2d 1053 (Fla. 3d DCA 1996), this court per curiam affirmed an order denying several drycleaners’ motion for preliminary injunction against County administrative enforcement. The issue on appeal in that case was whether the entities, were entitled to immunity prior to a grant of eligibility in the Cleanup Program.
The second case addressed whether the immunity extended to dryeleaning facilities under section 376.3078, was retroactive. This court held that “the legislature has clearly expressed its intention that the Act is to be retroactively applied.” Metropolitan Dade County v. Chase Federal Housing Corp., 705 So.2d 674 (Fla. 3d DCA 1998), notice to invoke discretionary jurisdiction filed, No. 92,536 (Fla. Mar. 9, 1998). This holding is not antagonistic to our conclusion in the present case and does not aid the County’s position here. Neither case supports reversal.

IV. Conclusion

In enacting the Drycleaning Facilities Restoration statute, § 376.3078, the legislature ensured that financial resources would be readily available “to provide a means for investigation and rehabilitation of contaminated sites without delay.” § 376.3078(l)(d). Using revenues from taxes on gross receipts of drycleaning facilities under section 376.70, and on the production or importation of per-chloroethylene under section 376.75, § 376.3078(2)(a), FDEP rehabilitates sites contaminated by discharged drycleaning solvents “that pose a significant threat to the public health, safety, or welfare.” § 376.3078(4), Fla. Stat. (1995).
FDEP has correctly interpreted section 376.3078, see § 120.68(7)(d), Fla. Stat. (1997), to give effect to the legislative policies behind this statute. FDEP’s interpretation is consistent with legislative intent and is supported by the stipulated facts the parties presented. The County has not demonstrated that Sekoffs behavior was a “willful violation” of local ordinances sufficient to disqualify it from participation in the Cleanup Program.
The FDEP’s order is therefore affirmed.
Affirmed.

. We note that on May 24, 1998, the legislature amended section 376.3078(3)(c), Florida Statutes, to clarify the definition of "gross negligence.” Pursuant to the amendment, a diycle-aning facility has committed "gross negligence” if it, inter alia, has “3. Willfully violated a local ... rule regulating the operation of drycleaning facilities ... with the knowledge, intent, and purpose that the act would result in harm. Ch. 98-189, § 10, Laws of Fla. In this case, the FDEP applied a definition of "gross negligence” that comports with the definition set forth in the amendment.

. There are other misdeeds that disqualify an applicant from participation. See § 376.3078(3)(c), (3)(b)l-4, Fla. Stat. (1995). These provisions are not at issue in this case.

. Despite having agreed to the stipulated facts reciting Sekoffs attempts at compliance, the County asserts that "the undisputed facts are that Sekoff ignored the orders of Dade County to clean up its contamination over a long period before its eligibility determination and site prioritization by FDEP.” Initial Brief, at p. 12 (emphasis added). The Stipulated Facts outline Sekoffs compliance with the County’s NOV.

. This holding makes it unnecessary to reach the issue of whether the County’s enforcement actions "regulat[e] the operation of dryeleaning facilities § 376.3078(3)(c), Fla. Stat. (1995).