823 So.2d 844 (2002)
FLORIDA HOSPITAL (Adventist Health, etc.), Appellant,
v.
State of Florida AGENCY FOR HEALTH CARE ADMINISTRATION, etc., Appellee.
No. 1D01-1887.
District Court of Appeal of Florida, First District.
August 20, 2002.
*845 J. Robert Griffin, Esq. of Tilton & Metzger, P.A., Tallahassee, for Appellant.
Gregory J. Philo, Esq. for the Agency for Health Care Administration, Tallahassee, for Appellee.
LEWIS, J.
Appellant, Florida Hospital, appeals a final order of appellee, the Agency for Health Care Administration (AHCA), which approved a recommended order from the Division of Administrative Hearings finding that appellant violated sections 395.002(15) and 395.0197(6), Florida Statutes (1997), by failing to report a hypoxic event that caused brain damage to a patient as a Code 15 occurrence. Appellant raises three arguments on appeal. We affirm the first issue without further discussion. In its second argument, appellant contends that AHCA's construction and interpretation of the term "brain damage" were impermissible because they *846 were inconsistent with the plain meaning of the statutes. Finally, appellant argues that AHCA's construction and interpretation of the term "brain damage" were vague and unconstitutional as applied. We affirm, holding that AHCA's construction and interpretation of the term "brain damage" are consistent with the plain meaning of the statutes, are not vague and were not unconstitutionally applied to appellant.
On June 9, 1998, S.P., a 95 year-old patient at Florida Hospital, became comatose, cyanotic and unresponsive after she became disconnected from her ventilator machine. While an employee of Florida Hospital heard S.P.'s room alarm sound, the nurses' station alarm failed to sound. It could not be determined as to how long S.P. remained disconnected from the ventilator. The medical staff of Florida Hospital then provided S.P. with respirator assistance and immediately transferred her back to the cardiac care unit, which is where S.P. had been prior to the ventilator incident. While in the cardiac care unit, S.P. received intensive therapeutic care and massive blood transfusions.
From June 10, 1998 through June 11, 1998, the consulting neurologist indicated in his progress notes that S.P. had a guarded prognosis and was not receptive to outside stimuli. From June 12, 1998 through June 17, 1998, the progress notes indicated that S.P. was improving. S.P.'s neurologist then noted that S.P. was "at baseline, neurologically stable." In other words, S.P.'s neurological condition returned to the state that it had been prior to the ventilator disconnection.
Subsequent to the ventilator incident, appellant took several remedial measures to prevent any future incidents of this type. Appellant's Code 15 committee reviewed S.P.'s case to decide whether or not it warranted Code 15 treatment, which consists of reporting to AHCA within fifteen days of the incident. The Code 15 committee voted against such Code 15 treatment, believing that since S.P. recovered to her neurological baseline, no brain damage had occurred. Instead of filing the incident as a Code 15, appellant reported the occurrence as an adverse incident in its Annual Report of Incidents.
AHCA filed an administrative complaint against appellant alleging a violation of section 395.0197(6), Florida Statutes (1997), for failure to report a hypoxic event that caused brain damage to patient S.P. as a Code 15 occurrence. In December 2000, a formal hearing was held. The ALJ, in accepting AHCA's interpretation that S.P. had suffered brain damage, found that S.P. suffered transient or temporary brain damage and appellant should have reported the incident as a Code 15. The ALJ recommended that AHCA had justification pursuant to section 395.0197(10), Florida Statutes (1997), to levy a $5,000.00 administrative fine against appellant. AHCA accepted both the ALJ's findings of fact and conclusions of law. This appeal followed.
Pursuant to section 395.0197(6)(b), Florida Statutes (1997), appellant, as a licensed hospital facility, is required to report to AHCA within fifteen days of occurrence, any "adverse or untoward incident" that results in "brain or spinal damage to a patient." An "adverse or untoward incident" is defined as:
an event over which health care personnel could exercise control, which is probably associated in whole or in part with medical intervention rather than the condition for which such intervention occurred, and which causes injury to a patient, and which:
(a) Is not consistent with or expected to be a consequence of such medical intervention;

*847 (b) Occurs as a result of medical intervention to which the patient has not given his or her informed consent;
(c) Occurs as the result of any other action or lack of any other action on the part of the hospital or personnel of the hospital;
(d) Results in a surgical procedure being performed on the wrong patient; or
(e) Results in a surgical procedure being performed that is unrelated to the patient's diagnosis or medical needs.
§ 395.002(2), Fla. Stat. (1997) (emphasis added).
The term "injury," for purposes of reporting to ACHA, is defined as an outcome caused by an "adverse or untoward incident" that results in:
(a) Death;
(b) Brain Damage;

(c) Spinal Damage;
(d) Permanent Disfigurement;
(e) Fracture or dislocation of bones or joints;
(f) Any condition requiring definitive or specialized medical attention which is not consistent with the routine management of the patient's case or patient's pre-existing physical condition;
(g) Any condition requiring surgical intervention to correct or control;
(h) Any condition resulting in transfer of the patient, within or outside the facility, to a unit providing a more acute level of care;
(i) Any condition that extends the patient's length of stay; or
(j) Any condition that results in a limitation of neurological, physical, or sensory function which continues after discharge from the facility.

§ 395.002(15), Fla. Stat. (1997) (emphasis added).
If an adverse or untoward incident, whether occurring in the licensed facility or arising from health care prior to admission in the licensed facility, results in:
(a) The death of a patient;
(b) Brain or spinal damage to a patient;

(c) The performance of a surgical procedure on the wrong patient;
(d) A surgical procedure unrelated to the patient's diagnosis or medical needs being performed on any patient, including the surgical repair of injuries or damage resulting from the planned surgical procedure, wrong site or wrong procedure surgeries, and procedures to remove foreign objects remaining from surgical procedures, the licensed facility shall report this incident to the agency within 15 calendar days after its occurrence.
§ 395.0197(6), Fla. Stat. (1997) (emphasis added).
The standard of review of an agency decision based upon an issue of law is whether the agency erroneously interpreted the law and, if so, whether a correct interpretation compels a particular action. See § 120.68(7)(d), Fla. Stat. (1997); Southwest Fla. Water Mgmt. Dist. v. Save the Manatee Club, Inc., 773 So.2d 594, 597 (Fla. 1st DCA 2000); Metro. Dade County v. Dep't of Envtl. Prot., 714 So.2d 512, 515 (Fla. 3d DCA 1998). In that the Legislature delegated to AHCA the power to enforce section 395.0197(6), Florida Statutes (1997), we note that we are required to be highly deferential to the agency's interpretation of such statute. As the supreme court recently affirmed in Verizon Florida, Inc. v. Jacobs, 810 So.2d 906, 908 (Fla.2002), an "agency's interpretation of the statute it is charged with enforcing is entitled to great deference." See also *848 BellSouth Telecomms., Inc. v. Johnson, 708 So.2d 594, 596 (Fla.1998). However, a court need not defer to an agency's construction or application of a statute if special agency expertise is not required, or if the agency's interpretation conflicts with the plain and ordinary meaning of the statute. Doyle v. Dep't of Bus. Reg., 794 So.2d 686, 690 (Fla. 1st DCA 2001).
If the language of the statute is clear and unambiguous and conveys a clear and definite meaning, the statute should be given its plain meaning. M.W. v. Davis, 756 So.2d 90, 101 (Fla.2000); Aetna Cas. & Sur. Co. v. Huntington Nat'l Bank, 609 So.2d 1315, 1317 (Fla.1992); Holly v. Auld, 450 So.2d 217, 219 (Fla.1984). When necessary, the plain and ordinary meaning of words in a statute can be ascertained by reference to a dictionary. Seagrave v. State, 802 So.2d 281, 286 (Fla.2001).
On appeal, appellant argues, as it did before AHCA, that AHCA's interpretation of the term "brain damage" is impermissible and inconsistent with the statutes' plain meaning. According to appellant, the Legislature did not intend to include those injuries that result in a "limitation of neurological, physical, or sensory function which continues after discharge from the facility" pursuant to section 395.002(15)(j), on the one hand, and include all injuries that result in even transient limitations of neurological or sensory function which do not continue after discharge from the facility within the meaning of "brain damage." We disagree.
The term "brain damage" exists under the list of every potential injury, enumerated in section 395.002(15), Florida Statutes (1997), separate and apart from "[a]ny condition that results in a limitation of neurological, physical, or sensory function which continues after discharge from the facility." §§ 395.002(15)(b) and (j), Fla. Stat. (1997). Therefore, we agree with AHCA, that it is irrelevant under either term "injury" or "adverse or untoward incident," whether any "brain damage" in fact "continues after discharge from the facility."
Section 395.0197(6)(b), Florida Statutes (1997), provides that "[b]rain or spinal damage to a patient" need be reported as a Code 15 occurrence. Appellant argues that this section should be interpreted as if the word "permanent" appears before the word "brain." However, from our reading of the statute, we agree with AHCA because the only term in the list of injuries enumerated in section 395.002(15) that the Legislature described as "permanent" is that of disfigurement. No such term modifies "brain damage." As the Legislature did not modify the term "brain damage" with any word such as "permanent" or "temporary," this intentional legislative omission cannot be lightly disregarded. Courts are not at liberty to add words to statutes that were not placed there by the Legislature. Seagrave, 802 So.2d at 286. Therefore, the plain meaning of the term is clear and unambiguous.
Furthermore, the word "damage" is defined as "loss due to injury; injury or harm to a person, property or reputation." Webster's Third New International Dictionary 571 (1981); see also Black's Law Dictionary 393 (7th ed.1999) (defining "damage" as "loss or injury to person or property"). This dictionary definition of "damage" does not confine the term to only permanent injury. Therefore, based upon the plain meaning of section 395.002(15), Florida Statutes (1997), brain damage can result even if a patient, such as S.P., returns to a neurological baseline.
From our reading of the statute, we agree that AHCA's interpretation of the statute also renders a more logical outcome. Once an enumerated incident *849 occurs, a licensed facility must report to the agency within fifteen days. If, based upon appellant's argument, a facility does not have to report an incident caused by a ventilator disconnection until the facility learns whether or not the incident is of a permanent nature, then in many cases it would be impossible for the facility to report to the agency within fifteen days. In the case at bar, S.P. began returning to a neurological baseline within three to four days. Yet, it is quite possible that S.P. could have remained comatose for months before returning to baseline. Based upon appellant's argument, even if it did take months for a patient to return to neurological baseline, that incident would not be reportable as a Code 15 either. This outcome is not reasonable and would render the fifteen-day reporting requirement dependant upon the length of the injury instead of its severity.
As for the third issue raised on appeal, that AHCA's construction and interpretation of the term "brain damage" were vague and unconstitutional as applied to appellant, AHCA argues that appellant waived this constitutional challenge by failing to raise this issue in the proceedings below. We find this argument to be without merit. This Court has previously decided that constitutional challenges can be raised for the first time on appeal. See Rice v. Dep't of Health and Rehabilitative Servs., 386 So.2d 844, 848 (Fla. 1st DCA 1980). Administrative agencies lack the power to consider or determine constitutional issues. Id. See also Carrollwood State Bank v. Lewis, 362 So.2d 110, 113-14 (Fla. 1st DCA 1978) (holding that the administrative process cannot resolve a constitutional attack on a statute, rule or regulation). Cf. Gulf Pines Mem'l Park, Inc. v. Oaklawn Mem'l Park, Inc., 361 So.2d 695, 699 (Fla.1978) (holding that a party is not required to argue the facial constitutionality of a statute before the administrative agency because the agency lacks the power to declare a statute unconstitutional). Therefore, appellant can challenge the constitutionality of AHCA's action for the first time in this appeal.
As discussed above, section 395.0197(6)(b), Florida Statutes, is clear and unambiguous. If the record demonstrates that a party engaged in some conduct, that is clearly proscribed by the plain and ordinary meaning of the statute, then that party cannot successfully challenge it for vagueness. Sieniarecki v. State, 756 So.2d 68, 74 (Fla.2000). In not reporting the ventilator incident as a Code 15 occurrence, appellant clearly violated the statute. Thus, we hold that AHCA's construction and interpretation of the statute are not vague and were not unconstitutionally applied to appellant. Accordingly, we affirm.
AFFIRMED.
BOOTH and WOLF, JJ., CONCUR.