MARSTILLER, J.
Appellant is a developmentally disabled client of the Agency for Persons with Disabilities (“Agency”), receiving services through the Home and Community-Based (“HCB”) Services Medicaid Waiver Program. He asserts that the Agency’s final order assigning him to Tier Three of the program instead of Tier One must be reversed under this court’s decision in Newsome v. Agency for Persons with Disabilities, 76 So.3d 972 (Fla. 1st DCA 2011). We agree.
*1251 The Agency approved as medically necessary for Appellant the following services comprising his annual cost plan for July 1, 2010, through June 30, 2011: supported living coaching ($16,452.80); adult dental care ($1,415.00); waiver support coordination ($1,571.40); specialized mental health counseling ($133.55); behavioral therapy ($7,618.56); companion services ($20,-152.60); and personal emergency response monitoring ($300). The total annual cost for these services was $47,643.91.[1]
Section 393.0661(3), Florida Statutes (2009), creates a four-tiered structure for the HCB waiver program based on the nature and extent of an individual’s disabilities and service needs. Each tier has an annual expenditure limit, and the statute directs the Agency to assign clients to one of the four tiers based on specified cost guidelines, rehable assessment instruments, and client characteristics.
In May 2010, the Agency notified Appellant of his assignment to Tier Three. Appellant challenged the assignment, arguing that he qualifies for placement in Tier One, which is limited to clients whose intensive medical and adaptive service needs are essential for avoiding institutionalization and cannot be met in the lower tiers, and clients with exceptional behavioral problems who present a substantial risk of harm to themselves or others. See § 393.0661(3)(a), Fla. Stat. (2009); Fla. Admin. Code R. 65G-4.0027(1). At the time of Appellant’s initial tier assignment, Tier One had no expenditure limit, while the limit for Tier Three was $35,000. See §§ 393.0661(3)(a), (c), Fla. Stat. (2009). The annual limits are now $150,000 and $34,125, respectively. See §§ 393.0661(3)(a), (c), Fla. Stat. (2010).
Evidence presented at the administrative hearing on Appellant’s challenge revealed the method the Agency used to assign Appellant to Tier Three. The hearing officer summarized the overall tier assignment process thusly:
The factors to be considered in determining a client’s appropriate tier assignment are found in Fla. Admin. Code R. 65G-4.0026(1). APD has promulgated this Rule and adopted provisions from Fla. Stat. § 409.906(13), Fla. Stat. § 393.0661, Fla. Admin. Code R. 59G-13.080, and Fla. Admin. Code R. 59G-13.083. APD must assign clients based on their needs as reflected in their Support Plan, QSI [Questionnaire for Situational Information], and the services authorized on their Cost Plan. Any services authorized in an approved cost plan are key indicators of a tier assignment because they directly reflect the level of medical, adaptive, or behavioral needs of a client. Additionally, the only needs to be considered when making a tier assignment include only those services approved through the prior service authorization process to be medically necessary. APD will also take into consideration the client’s current living setting and the availability of supports and services from other sources, including Medicaid state plan and other federal, state, and local programs as well as natural and community supports.
The hearing officer found that Appellant, who suffers mental retardation and epilepsy, has exceptional behavioral *1252 problems and is a substantial risk to himself and others. Thus, Appellant meets the second statutory criterion for Tier One. Rule 65Gb4.0027(l)(b), Florida Administrative Code, provides that such clients whose “resulting service needs [ ] cannot be met in Tiers Two, Three, and Four” will be placed in Tier One. Under rules 65G-4.0026O) and 65G-4.0027(4), Florida Administrative Code, the Agency considers the approved, medically necessary services in the client’s cost plan to determine whether the client’s needs can be met through a lower tier. Rule 65G-40027(4) lists 17 services that “will be used as the primary basis for making an assignment[.]” See Fla. Admin. Code R. 65G-4.0027(4)(a)-(q). These services are only a subset, however, of those available to clients pursuant to the “Florida Medicaid Developmental Disabilities Waiver Services Coverage and Limitations Handbook, November 2010.” See Fla. Admin. Code R. 59G-13.083(2).
Only three of the seven approved medically necessary services in Appellant’s cost plan — behavioral analysis, supported living coaching, and specialized mental health services — are on the list in rule 65G-4.0027(4). The Agency considered just those three, as well as waiver support coordination, which all waiver clients apparently must receive, and determined that the $25,776.31 combined cost of those services fell within the $34,125 expenditure limit for Tier Three. Concluding that Appellant’s needs thus could be met in Tier Three, the Agency placed him there instead of in Tier One.[2]
In Newsome, we reversed a Tier Three assignment, finding that the Agency incorrectly interpreted rule 65G-4.0027(4) as limiting consideration of approved services in a client’s cost plan to only those specified in the rule. There, the appellant met the “intense medical needs” statutory criterion for Tier One, and her cost plan included personal care assistance, adult day training, transportation, consumable medical supplies, durable medical equipment, adult dental care, respite care, and waiver support coordination, at a total cost of approximately $72,000. See Newsome, 76 So.3d at 974. In determining that the appellant’s needs could be met in Tier Three, the Agency considered only the cost of her personal care assistance and waiver support coordination. Id. Finding this to be error, we reasoned:
[Rule 65G-4.0027(4) ] states that the listed services are to be used as the “primary basis” for tier assignment; it does not state that the listed services are the only services to be considered.... [T]he Agency’s narrow interpretation of this rule is inconsistent with the proposition stated in rule 65G-4.0026(l)(c) that “[t]he services authorized in an approved cost plan shall be key indicators of a tier assignment because they directly reflect the level of medical, adaptive, or behavioral needs of a client.”
Id. at 975. We concluded that at least one other service in the appellant’s cost plan— consumable medical supplies — was directly related to her intensive medical needs, and that had the Agency correctly considered it, the appellant’s needs would have exceeded the Tier Three expenditure limit. Id.
In the instant case, the Agency posits that rule 65G-4.0027(4) reflects a policy determination that the listed services reflect intense medical, adaptive, or behavioral needs. This determination we do not question. But as we pointed out in Newsome, those services are the “primary *1253 basis,” not the sole basis, for a tier assignment. Every client is different and will have individualized service needs depending on the severity and combination of his or her disabilities. Thus, a client’s cost plan may include services not reflected in rule 65G-4.0027(4) that nonetheless are intended to meet his or her intense medical, adaptive, or behavioral needs. Hence, rule 65G-4.0026(l)(c) directs that “[t]he services authorized in an approved cost plan shall be key indicators of a tier assignment because they directly reflect the level of medical, adaptive or behavioral needs of a client.”
Although not listed in rule 65G-4.0027(4), Appellant’s cost plan includes $20,152.60 in annual companion services. Had the Agency also considered this service, the total cost of Appellant’s service needs would have exceeded the Tier Three expenditure limit, and Appellant would have qualified for placement in Tier One. The Agency asserts that it determined— and presented evidence proving — Appellant does not need the level of companion services reflected in his cost plan, and does not meet Tier One requirements, because his recent behavior reflects he is not a danger to himself or others. The hearing officer found to the contrary, however, stating in the recommended order:
Petitioner received an overall moderate score in the behavioral status section of the QSI with scoring in the areas of being aggressive to others, hurtful to others, and destructive to property. Additionally, Petitioner’s 2010 Support Plan references interventions by the criminal justice system and incarcerations in 2008 and 2009. Testimony was presented corroborating petitioner’s claim of exceptional behavioral problems. Petitioner currently receives the services of a behavior analyst and [sic] which has assisted petitioner’s supported living coach and companion in alleviating petitioner’s problematic behaviors. However, evidence establishes that petitioner continues to engage in verbal aggression; although the frequency is intermittent, the intensity and duration have previously necessitated law enforcement’s intervention and may very well again. Respondent’s contention that petitioner lacks exceptional behavioral problems uses a nearly insurmountable standard for any individual to meet. Upon review of the testimony and evidence, petitioner does have exceptional behavioral problems which present a substantial risk of harm to himself and others.
The Agency filed no exception to this finding and, indeed, adopted it in its final order. It cannot now take a contrary position. In light of the hearing officer’s unchallenged and adopted factual finding that Appellant possesses exceptional behavioral problems and presents a substantial risk of harm to himself or others, and based on our reasoning in Newsome, we conclude the Agency failed to demonstrate that Appellant’s needs can be met in Tier Three. For this reason, we reverse the final order on appeal and remand with directions that Appellant be assigned to Tier One.[3]
REVERSED and REMANDED.
ROWE and SWANSON, JJ„ concur.

. As of January 13, 2011, Appellant's revised cost plan, totaling $46,595.36, included behavioral analysis services ($7,618.56); companion services ($20,152.60); waiver support coordination ($1,571.40); supported living coaching ($16,452.80); adult dental services ($500); and personal emergency response service ($300). However, the Agency based its initial tier assignment on the July 1, 2010-June 30, 2011, cost plan.

. Appellant did not meet the Tier Two residential habilitation requirement or the Tier Four $14,792 expenditure limit. See §§ 393.0661(3)(b), (d), Fla. Stat. (2009).

. We note an apparent inconsistency between section 393.0661(3)(a), Florida Statutes, and rule 65G-4.0027(1), Florida Administrative Code. The statute reads, in pertinent part:
*1254 Tier one is limited to clients who have service needs that cannot be met in tier two, three, or four for intensive medical or adaptive needs and that are essential for avoiding institutionalization, or who possess behavioral problems that are exceptional in intensity, duration, or frequency and present a substantial risk of harm to themselves or others.
The Agency's rule, on the other hand, states:
The Tier One Waiver is limited to clients that the Agency has determined meet at least one of the following criteria:
(a) The client’s needs for medical or adaptive services are intense and cannot be met in Tiers Two, Three, and Four and are essential for avoiding institutionalization, or
(b) The client possesses behavioral problems that are exceptional in intensity, duration, or frequency with resulting service needs that cannot be met in Tiers Two, Three, and Four, and the client presents a substantial risk of harm to themselves or others.
(Emphasis added.) The highlighted proviso in rule 65G-4.0027(l)(b), relating to clients with behavioral problems who risk harming themselves or others, does not appear also to be included in the statutory language. Thus, we question whether for such clients application of rule 65G-4.0027(4), as occurred in this case, is in accord with the statute.