PER CURIAM.
The appellant is a developmentally disabled client of the Agency for Persons with Disabilities (the Agency) receiving services through the Home and Community-Based Service Medicaid waiver program. The appellant originally sought review of a November 15, 2011, final order by the Agency assigning him to tier three of the waiver program (the original final order).
Section 393.0661(3), Florida Statutes, defines four tier levels based upon the nature *1055 and extent of a client’s service needs and reads, in part,
(a) Tier one is limited to clients who have service needs that cannot be met in tier two, three, or four for intensive medical or adaptive needs and that are essential for avoiding institutionalization, or who possess behavioral problems that are exceptional in intensity, duration, or frequency and present a substantial risk of harm to themselves or others....
Each tier carries an expenditure limit. At the time of the appellants assignment in 2010, tier one had an annual spending cap of $150,000, and tier three had an annual spending cap of $35,000. In 2011, the expenditure limits were reduced. The spending cap of tier three was reduced to $34,125 per client each year. See § 393.0661(3)(c), Fla. Stat. (2011).
The Agency’s rule for tier assignments reads, in part,
(1) The Tier One Waiver is limited to clients that the Agency has determined meet at least one of the following criteria:
(a) The client’s needs for medical or adaptive services are intense and cannot be met in Tiers Two, Three, and Four and are essential for avoiding institutionalization, or
(b) The client possesses behavioral problems that are exceptional in intensity, duration, or frequency with resulting service needs that cannot be met in Tiers Two, Three, and Four, and the client presents a substantial risk of harm to themselves or others.
* * *
(4) Clients who meet the criteria in subsection (1), and their needs cannot be met in Tier Two, Tier Three or Tier Four, shall be assigned to the Tier One Waiver. The following services as defined in the DD Handbook, if approved through the Agency’s prior authorization process, will be used as the primary basis for making an assignment or determining whether a tier change to Tier One is required....
Fla. Admin. Code R. 65G-4.0027. Rule 65G-4.0027(4)(a)-(q) goes on to list 17 particular services including personal care assistance and behavior assistant services.
The appellant’s primary diagnosis was mental retardation. His other diagnoses included, among others: paranoid schizophrenia, paranoid delusional, and explosive behavior disorder. The appellant’s 2010-2011 cost plan contained the following approved services that the parties stipulated were medically necessary: dental ($163.33), waiver support coordination ($1,561.58), behavioral therapy ($4,880.03), behavioral assessment ($255.19), companion care ($19,138.24), respite ($1,798.66), and personal care assistance at the moderate level ($21,765.60). The total cost of the appellant’s approved services was $49,562.63.[1]
The original final order determined that the appellant met the threshold criteria for tier one in that he did possess behavioral problems that were exceptional in intensity, duration, or frequency. However, the Agency concluded that the appellant was not eligible for tier one because his service needs could be met in tier three. The Agency’s decision only considered those services that the appellant received that were specifically listed in rule 65G-4.0027(4)(a)-(q).
After the appellant appealed the original final order, the Agency sought a remand of *1056 jurisdiction to correct several errors in the original final order it styled as “scrivener’s errors.” Jurisdiction was relinquished during which time the Agency came to believe that the original final order was in error in light of this Court’s decision in Newsome v. Agency for Persons with Disabilities, 76 So.3d 972 (Fla. 1st DCA 2011).[2] The Agency sought an extension on remand to conduct an evidentiary hearing in light of Newsome to determine which of the appellant’s services were “directly related” to his exceptional behavioral needs. The Agency’s request was improvidently granted, and jurisdiction was extended, during which time the Agency remanded the case back to the Department of Children and Family Services for an evidentiary hearing.
On remand, the hearing officer issued an amended recommended order that again found that the sum of the appellant’s “key indicator services” as set forth in rule 65G-4.0027(4) — behavioral therapy ($4,880.04) and personal care assistance ($21,765.60) — totaled $26,645.04, which was less than the tier three cap of $34,125. The hearing officer concluded that this case was distinguishable from Newsome in that there was no proven correlation between the appellant’s services not listed in subsection (4), specifically companion care and respite care, and his behavioral service needs. The hearing officer again recommended that the appellant be assigned to tier three. The Agency’s amended final order affirmed the assignment to tier three. We find that the amended final order was in error.
The hearing officer’s role is to consider the evidence, resolve conflicts, judge the credibility of witnesses, draw permissible inferences, and make findings of fact based upon competent substantial evidence. See Heifetz v. Dep’t of Bus. Regulation, 475 So.2d 1277, 1281 (Fla. 1st DCA 1985). If supported by competent, substantial evidence, an appellate court must accept those findings. See Boyd v. Dep’t of Revenue, 682 So.2d 1117, 1118 (Fla. 4th DCA 1996). The standard of review of an agency decision based on an issue of law is whether the agency’s interpretation is erroneous and whether a particular course of action is compelled by the correct interpretation. See Metro. Dade County v. State Dep’t of Envt’l Prot., 714 So.2d 512, 515 (Fla. 3d DCA 1998). An agency’s interpretation of its own rules and statutes is generally accepted unless clearly erroneous. Id.
As an initial matter, we agree with the panel in T.S. v. Agency for Persons with Disabilities, 87 So.3d 1250, 1253 n. 3 (Fla. 1st DCA 2012), that there is an inconsistency between the definitions of tier one in section 393.0661(3)(a) and rule 65G-4.0027(1), and we question whether rule 65G-4.0027(4) should have even been applied in this case. Nonetheless, under the unique procedural posture of this case, subsection (4) was applied, albeit erroneously.
*1057 In applying subsection (4) and considering whether the appellant’s companion and respite services were “directly related” to his exceptional behavioral needs, the hearing officer relied upon the definition of companion care and respite services in the Agency’s DD Waiver Handbook adopted as an Agency rule pursuant to rule 59G-13.083, Florida Administrative Code. We find such reliance in error because it divests rules 65G-4.0026(l)(e) and (6)of meaning in tier assignments and leads to the foregone conclusion that there could never be a correlation between companion and respite services and an individual client’s exceptional behavioral needs. Cf. T.S., 87 So.3d at 1253 (noting that had companion services been considered, the appellant, an individual with exceptional behavioral needs, would have qualified for placement in tier one).
The hearing officer also considered the characterization of companion and respite services in the appellant’s 2011 support plan to conclude that companion care was utilized to address the appellant’s community inclusion goals. This conclusion was erroneous in that the appellant’s 2011 support plan pre-dated his 2012 behavioral plan admitted into evidence, which showed that companion care was a part of his behavior plan in that it was used as an incentive tool for reducing behavioral challenges. Even at the original hearing, the appellant’s behavior therapist testified that companion care services were a “very important” part of his behavior plan. Notably, the hearing officer made no finding or conclusion that companion and respite were not part of the behavioral plan.
The hearing officer also based her conclusion that companion care was utilized to address the appellant’s community inclusion goals upon the finding that the appellant’s target behaviors improved during the months immediately following the reduction in his companion hours. There is no record evidence to support this finding. The only evidence indicating that the appellant’s behaviors improved was a December 13, 2011, statement from his behavior therapist, which was one month after the appellant’s services were reduced following the Agency’s November 15, 2011, final order. Finally, the hearing officer considered numerous instances in which the appellant had been Baker-acted and the accompanying Agency incident reports to conclude that his target behaviors began to escalate as a result of boredom. The hearing officer then found that “the behavioral analyst implemented behavior modification techniques to address these behaviors.” There is no record evidence to support this finding.
We find that the hearing officer’s amended recommended order is based on facts not supported by competent, substantial evidence. The Agency failed to demonstrate that the appellant’s service needs can be met in tier three. The appellant’s companion care services amounted to $19,138.24 in the 2011 cost plan. The inclusion of this service alone amounts to $45,783.28, which exceeds the expenditure limit for tier three. Given the unique procedural posture of this case, we reverse the amended final order and remand with directions that the appellant be assigned to tier one.
PADOVANO and ROBERTS, JJ., concur.
BENTON, C.J., dissents.

. The appellant’s 2009-2010 cost plan contained the following approved, services: dental ($165), waiver support coordination ($1,571.40), behavioral therapy ($2,781.24), behavioral assessment ($286.19), companion care ($8,411.52), respite ($1,812.00), and personal care assistance ($21,900.00).

. In Newsome, this Court reversed a final Agency order assigning Newsome to tier three where the Agency failed to consider other services in her cost plan that were not specifically listed in rule 65G-4.0027(4). Id. at 974. This Court determined that the plain language of the rule did not limit consideration of the client’s needs only to the services listed in the rule. Id. at 975. This Court declined to determine whether all of the services on an approved cost plan should be considered in determining tier assignment or whether the Agency could limit its consideration to only those services that were "directly related” to a client’s intensive medical needs or behavioral problems. Id. In Newsome's case, her cost plan included consumable medical supplies that were directly related to her intense medical needs. Id. With the inclusion of only the consumable medical supplies, the sum of her service needs exceeded the expenditure cap of tier three and warranted assignment to tier one. Id.